721 P.2d 392

STATE of New Mexico,
Plaintiff-Appellee,

v.

Kirk CHAPMAN, Defendant-Appellant.

No. 15795.

Supreme Court of New Mexico.

June 17, 1986.

325

The issues we address on appeal are:

I. Whether the trial court erred in failing to admonish the jury to disregard a reference made by the state's expert witness regarding "similar" cases.

II. Whether the trial court violated Chapman's right to due process and personal representation when it failed to respond to Chapman's request to proceed *pro se.*

III. Whether New Mexico law infringes upon a defendant's right to due process by requiring that he have the burden of proof on the issue of competency to stand trial.

IV. Whether Chapman was deprived of due process and a fair trial by an impartial jury because the same jury was charged with determining both his competency to stand trial and his state of mind at the time of the offense during the guilt-innocence phase of the trial.

Another issue raised by supplemental briefs submitted by the parties is:

V. Whether Chapman was deprived of due process and a fair trial because the jury instruction on competency given at his trial was deficient in informing the jury of the proper test for determining competency.

## I. Failure to admonish.

Dr. Egelman (Egelman), a psychiatrist, testified for the state on rebuttal. Egelman was asked by the prosecutor to discuss the relationship between violence and paranoid-schizophrenia. Egelman testified that there was no direct relationship between the two. He stated that not all paranoid-schizophrenics are violent, murderous people and that paranoid-schizophrenics rarely get into the news for murder. In an apparent attempt to add credibility to his opinion, Egelman went on to say:

> Besides Kirk, the only two I can think of were, uh recently, were the fellow in California who rode his car up on the sidewalk and killed a girl and injured about forty-eight people. He was diag-

Paul Bardacke, Atty. Gen., Peter S. Kierst, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Lynne Fagan, Appellate Defender, Santa Fe, for defendant-appellant.

Gary Mitchell, Ruidoso, Trial Counsel.

## OPINION

RIORDAN, Chief Justice.

Defendant Kirk Chapman (Chapman) was convicted of the murders of his mother and father and was sentenced to serve two life sentences. Chapman appeals. We reverse.

nosed as a paranoid-schizophrenic, and he has just been, just a few days ago, he was found guilty of one count of first degree murder and forty-eight of attempted murder. Son of Sam was apparently schizophrenic . . .

At this point defense counsel interrupted and informed the court that he had a motion to make. This motion is inaudible on the taped transcript, but a subsequent record on this issue was made. Defense counsel moved for a mistrial or alternatively for a jury admonition to disregard the above-quoted portion of Egelman's testimony. As grounds therefor, defense counsel argued that Egelman's testimony about the results in the California case was "highly irrelevant and extremely prejudicial." Defense counsel stated that Egelman's statement openly encouraged the jury to believe that a finding of guilt was proper in Chapman's case. The state did not dispute this and indicated that it would agree to a limiting instruction to have the jury disregard the testimony as requested by the defense. The trial court found that defense counsel's objection was timely and well taken, but denied the motion for mistrial. However, the court also refused to give a limiting instruction, stating that such instruction could not be made "without making the jury argument for both sides," and that, the trial court would "leave it as it stands."

On appeal, Chapman argues that Egelman's statements were irrelevant and extremely prejudicial in that they served no other purpose than to invite the jury to find Chapman guilty by comparing him to the California and Son of Sam cases. The state argues that Chapman has failed to show any prejudice resulting from Egelman's statements and suggests that in fact the statements tended to indirectly support Chapman's theory of the case, namely, that paranoid-schizophrenia and violence could be connected and therefore, Chapman's defense of not guilty by reason of insanity may have merit. The state further argues that Egelman's comments did not invite any conclusion regarding Chapman.

It is impossible to know what the jury thought regarding Egelman's comments. However, we believe that it is likely that Egelman's comments create a strong implication that, because the California and Son of Sam cases involved paranoid-schizophrenics involved in murders and, since in at least one of those cases the defendant was found guilty, then Chapman, also a paranoid-schizophrenic who had engaged in violent behavior, should also be found guilty. The comment as made clearly informs the jury that at least one of the two other instances involving violent paranoid-schizophrenics have resulted in guilty verdicts. Thus, the immediate implication of the testimony and the inference that could be drawn was that Chapman, a paranoid-schizophrenic who engaged in violent conduct, could also be found guilty. There is no question but that the jury could have been influenced by Egelman's comments.

We do not understand the state to argue that the comment was in any way proper. The state merely argues that Chapman was not prejudiced by the trial court's failure to give a limiting instruction to the jury. However, this Court has held that a trial court has a duty "to see that no improper statements are made [which are] likely to influence the jury in their verdict. . . ." *State v. Cummings*, 57 N.M. 36, 39, 253 P.2d 321, 323 (1953). Given the facts as they exist in this case, there does not appear to be any rational reason for the trial court to have denied Chapman's request for a limiting instruction. Both defense counsel and the state were amenable to the instruction. Had the court properly instructed the jury to disregard the improper comment as requested, any error would have been cured. *State v. Simonson*, 100 N.M. 297, 669 P.2d 1092 (1983). However, in *failing* to give the requested instruction, there is a high probability that harm was done and that the jury was improperly influenced in rendering its verdict. Therefore, we determine that the trial court erred in refusing Chapman's requested limiting instruction and his conviction is therefore reversed and the case remanded for a new trial. Because a new trial is required,

we address Chapman's other claims of error.

## II. Failure to allow Chapman to proceed *pro se.*

During the course of Chapman's trial, he asked to be allowed to proceed *pro se.* The trial court listened to Chapman's request and then simply stated that the request was denied. On appeal, Chapman argues that this summary denial of his request to proceed *pro se* was error in that the trial court failed to engage Chapman in a *Faretta* inquiry or, alternatively, failed to resurrect the issue of Chapman's competency to stand trial.

Under *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) a defendant should be accorded the right of self-representation when he or she is able to make a knowing and intelligent waiver of counsel. Chapman argues that under *Faretta* and *Westbrook v. Arizona,* 384 U.S. 150 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966), the trial court had a duty not only to warn him of the dangers of self-representation but also to inquire into his abilities to make a valid waiver of counsel and to observe courtroom procedures and protocol. *Westbrook* involved a situation where a defendant was allowed to proceed *pro se* without first being afforded a hearing or inquiry into the issue of his competency to waive his constitutional right to assistance of counsel. Chapman argues that, under *Westbrook,* any time a defendant requests self-representation he must be allowed a hearing on the issue. We disagree. *Westbrook* does not specifically require a certain type of hearing. It simply states that "no hearing or inquiry" had been afforded Westbrook, and thus his conviction was subsequently vacated on appeal. *Id.* On the strength of *Westbrook* and *Faretta,* Chapman argues that since the trial court failed to accord him a hearing or inquiry into the matter of his ability to waive counsel, he was therefore denied due process and his right to represent himself. However, as stated previously, neither *Faretta* nor *Westbrook* require any set procedure

for determining a defendant's ability to represent himself. Indeed, this is recognized in Chapman's brief on appeal.

In a case where a defendant wishes self-representation, the trial court must determine if a defendant is making a knowing and intelligent waiver of counsel and fully understands the dangers of self-representation. In order to do so, the court must inform itself regarding a defendant's competency, understanding, background, education, training, experience, conduct and ability to observe the court's procedures and protocol. *McKaskle v. Wiggins,* 465 U.S. 168, 183–84, 104 S.Ct. 944, 953–54 (1984); *Faretta,* 422 U.S. at 835, n. 46, 95 S.Ct. at 2541 n. 46; *State v. Montler,* 85 N.M. 60, 509 P.2d 252 (1973). However, in the instant case, the trial court already had at its disposal all of this necessary information. The trial court had just presided over a lengthy competency hearing in which Chapman was given an opportunity to speak at length. Chapman's performance during the immediately preceding competency hearing clearly indicated his inability to appreciate the pitfalls of self-representation, when on the issue of representing himself, his competency, understanding, background, education, training, experience, conduct and ability to observe procedures and protocol of the court were considered and weighed. All of this information was fresh in mind when the trial court denied Chapman's request to proceed *pro se.* Thus, under the facts of this case, we determine that the trial court did not err in summarily denying Chapman's request to proceed *pro se.*

## III. Burden of proof.

Chapman argues that he was denied due process because he was required to carry the burden of proof, by a preponderance of the evidence, that he was not competent to stand trial. However, this Court has previously determined that there is no impropriety in requiring an accused to carry this burden. In *State v. Ortega,* 77 N.M. 7, 19, 419 P.2d 219, 228 (1966) we stated:

That possibly two states and the federal courts apply a different rule does not convince us there is anything basically improper in the requirement. No question of guilt or innocence or the proof of charges of criminal conduct are involved—only mental condition to stand trial. The point is without merit.

We are not persuaded to change this long established premise.

## IV. Competency to stand trial and state of mind at time of offense.

 Chapman next argues that fundamental error occurred because the same jury determined his competence to stand trial and then determined his state of mind relating to his insanity defense during the trial on the merits. However, submitting both questions to the same jury was proper since defense counsel stipulated to the same jury hearing both issues. Defense counsel then voiced objection to the procedure after the jury had returned their verdict that Chapman was competent to stand trial and the trial on the merits had begun. Chapman argues that such procedure prejudiced him in the guilt phase because the jury had already heard evidence regarding the crimes during the competency phase. However, Chapman himself introduced the evidence of the crimes in the competency phase during extensive questioning on direct examination. He will not now be heard to claim this is prejudicial error. *State v. Gilbert,* 100 N.M. 392, 671 P.2d 640 (1983), *cert. denied,* 456 U.S. 1073, 104 S.Ct. 1429, 79 L.Ed.2d 753 (1984). Chapman also asserts prejudice occurred because, in finding him competent to stand trial, the jury obviously accepted the view of the state's witness and this acceptance carried over into the guilt phase. We disagree. The competency verdict made by the jury was entirely separate from the guilty verdict. Two completely different legal standards and burdens of proof were necessary to a determination in both instances. Further, the jury was directed under proper instructions to evaluate Chapman's mental state at two different times, the day the murders were committed and the start of trial. The evidence supporting one verdict does not necessarily support the other.

We therefore determine that Chapman suffered no prejudice in this case by the fact that the same jury determined both his competency to stand trial and whether he was guilty of the murders of his mother and father.

## V. Adequacy of jury instruction on competency.

On supplemental briefs submitted by the parties, Chapman argues that the jury instruction given regarding the test for determining competency deprived him of due process and a fair trial. The jury was instructed on competency under U.J.I.Crim. 41.03. That instruction reads in pertinent part:

Before considering whether the defendant committed the crime charged, you must make a determination of his competency to stand trial. A person is competent to stand trial if he:

1. Understands the nature and significance of the criminal proceedings against him;

2. has a factual understanding of the criminal charges; and

3. is able to assist his attorney in his defense.

Chapman's contention on appeal is that the above-quoted instruction violates due process in that a defendant should not be tried for a crime committed unless he has a rational as well as a factual understanding of the proceedings against him, and unless he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding. *See Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). Chapman asserts that U.J.I.Crim. 41.03 is deficient because it fails to incorporate the necessary element of rational understanding.

Chapman's requested instructions numbers 9, 10, and 19 on the issue of competen-

cy were refused by the trial court. Requested instruction number 9 stated, "For a defendant to be able to assist in his own defense he must be able to make a rational defense." Requested instruction number 10 defined "rational" as meaning "reasonable." Requested instruction number 19 was a direct quote from the Court of Appeals' opinion in *Chapman* I, 101 N.M. at 484, 684 P.2d at 1149, and which was adopted in full and incorporated as part of Justice Walters' dissent in *Chapman* I. Instruction number 19 stated that "The touchstone for competency to stand trial ... is whether defendant has sufficient present ability to consult with his attorneys with a reasonable degree of rational understanding, and whether he has a rational as well as a factual understanding of the proceedings against him."

The Court of Appeals held, however, that U.J.I. 41.03 embodied the principle of rational understanding within it and, therefore, was not required to be modified or paraphrased. In its opinion, attached as an appendix in *Chapman* I, the Court of Appeals stated:

Under former UJI Crim. 41.01, and the newly drafted UJI Crim. 41.03, the test of a defendant's competency to stand trial, rests upon the requirement of a reasonable degree of rationality as defined in *Dusky*.

The trial court did not err in refusing defendant's requested jury instructions. The instructions cited on appeal focus on the term "rational" and its definition. "Rational" means to act with reason and understanding. Webster's Third New International Dictionary 1885 (1961). This definition is embodied in UJI Crim. 41.01 [present UJI Crim. 41.03] by the requirement that competency be shown by proof that the accused "understand" the nature of the proceedings, the seriousness of the charges and be capable of assisting in his own defense. The term "rational" is a synonym for the requirement that the accused "understand." Where a uniform jury instruction correctly states the law, it is improper to modify

such instruction, nor is it necessary to paraphrase such instruction. *See State v. Padilla* [90 N.M. 481, 565 P.2d 352]. *Chapman* I, 101 N.M. at 483, 684 P.2d at 1148. This Court overruled the Court of Appeals' opinion only to the extent that it held that there was insufficient evidence to support the jury verdict of competency. This Court did not address the denial of the requested jury instructions. However, we now adopt the Court of Appeals' analysis of the present U.J.I.Crim. 41.03 as our own, and determine that the instruction comports with the requirements of rationality enunciated in *Dusky* and *Pate*.

## CONCLUSION.

Because we determine that Chapman was denied a fair trial when the trial court refused to give a limiting instruction to the jury regarding the testimony of Dr. Egelman, Chapman's conviction is reversed and the case is remanded for a new trial.

IT IS SO ORDERED.

SOSA, Senior Justice and WALTERS, J., concur.