2005-NMCA-080

114 P.3d 407

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Mark REYES, Defendant–Appellant.**

**No. 24,739.**

Court of Appeals of New Mexico.

May 3, 2005.

Patricia A. Madrid, Attorney General, Santa Fe, Steven S. Suttle, Assistant Attorney General, Albuquerque, for Appellee.

John Bigelow, Chief Public Defender, Sheila Lewis, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

BUSTAMANTE, Chief Judge.

{1}  Defendant Mark Reyes appeals from the district court's decision that he is not competent to proceed as his own counsel, and that he did not knowingly and intelligently waive his right to counsel. Based on the following, we reverse the district court's decision.

### FACTUAL AND PROCEDURAL BACKGROUND

{2}  On June 5, 2000, the State filed a criminal information charging Defendant with attempted first-degree murder, retalia-

tion against a witness, receipt, transportation, or possession of a firearm by a felon, and tampering with evidence. Richard Gallagher, a public defender, was appointed to represent Defendant and entered his appearance on June 6, 2000. Defendant immediately wrote a letter to the district court requesting that he be allowed to represent himself in his trial and that Gallagher be removed as his counsel. Defendant stated that Gallagher did not represent him properly in Defendant's previous trial, and that he had shown himself again to be misrepresenting Defendant by not allowing his witnesses to speak in court. Gallagher then filed a motion to substitute counsel or in the alternative to allow Defendant to proceed pro se.

{3} Hearings on Defendant's motion to represent himself were scheduled and rescheduled, and the matter was brought up at a pre-trial conference. However, the matter was not resolved for various reasons, and the district court did not conduct a hearing on Defendant's complaints, even when Gallagher alerted the district court to Defendant's dissatisfaction with counsel and his wish to represent himself. After a hearing in early September where the district court praised Gallagher for his perseverance in continuing to represent Defendant, there was no further discussion regarding Gallagher's representation. Defendant was represented by Gallagher at his jury trial and was found guilty of attempted first-degree murder and receipt, transportation, or possession of a firearm by a felon.

{4} After the judgment and sentence was entered, Defendant wrote another letter to the district court requesting court transcripts and noting that his motion to dismiss Gallagher was never ruled upon by the district court. Defendant appealed his convictions for attempted first-degree murder and felon in possession of a firearm, contending that the district court erred in failing to conduct a hearing concerning his interest and ability to represent himself or replace Gallagher at trial pursuant to *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In a memorandum opinion, we held that the district court violated Defendant's Sixth Amendment right to counsel by failing to conduct a *Faretta* hearing to determine whether Defendant knowingly, intelligently, and voluntarily waived his right to counsel. Defendant's case was remanded to the district court for a *Faretta* hearing.

{5} The district court held a *Faretta* hearing on October 31, 2003. At the hearing, Defendant was questioned by his defense counsel at that time, Jesse Cosby (Cosby), the prosecutor, and the district judge. Among other things, Defendant expressed his unwavering desire to proceed pro se even if it was potentially detrimental to his defense. Counsel and the district judge discussed with Defendant the rules of proceeding pro se and Defendant's familiarity with the trial setting and some court procedure, and they explored Defendant's criminal history. Defendant requested standby counsel, and stated that Cosby would be acceptable. The district court determined, however, that under factors set forth in *Faretta*, Defendant was not competent to represent himself or conduct himself in conformity with the rules of evidence and courtroom procedures. The district court concluded that "Defendant's waiver of counsel, while voluntary, is not knowing and intelligent, and therefore inadequate." This appeal followed.

## DISCUSSION

### Standard of Review

{6} Our Supreme Court has stated that whether a defendant made a valid knowing, intelligent, and voluntary waiver of his constitutional rights " 'is a question of law which we review de novo.' " *State v. Martinez*, 1999–NMSC–018, ¶ 15, 127 N.M. 207, 979 P.2d 718 (quoting *United States v. Toro–Pelaez*, 107 F.3d 819, 826 (10th Cir.1997)); *State v. Padilla*, 2002–NMSC–016, ¶ 18, 132 N.M. 247, 46 P.3d 1247; *State v. Plouse*, 2003–NMCA–048, ¶ 21, 133 N.M. 495, 64 P.3d 522 (stating that we review de novo whether the district court violated a defendant's right to counsel by failing to adequately determine whether his decision to waive counsel and represent himself was made voluntarily, knowingly, and intelligently).

### The Right to Self–Representation

■ {7} *Faretta* states that "[w]hen an accused manages his own defense, he relin-

quishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525 (holding that the Sixth Amendment accords a criminal defendant the right to proceed without counsel when he or she voluntarily and intelligently waives his or her right to counsel and elects to proceed pro se). In so holding, *Faretta* also states that a defendant must be made aware of the risks that go along with self-representation. *Id.* at 832, 835. Our Supreme Court followed *Faretta* in *State v. Chapman*, 104 N.M. 324, 327, 721 P.2d 392, 395 (1986), by recognizing that a defendant must be "accorded the right of self-representation when he or she is able to make a knowing and intelligent waiver of counsel." Therefore, "[i]n a case where a defendant wishes to represent himself, the district court must determine if the defendant is making a 'knowing and intelligent' waiver of counsel and understands fully the dangers of self-representation." *State v. Rotibi*, 117 N.M. 108, 110, 869 P.2d 296, 298 (Ct.App.1994) (quoting *State v. Castillo*, 110 N.M. 54, 57, 791 P.2d 808, 811 (Ct.App.1990)); *see also Chapman*, 104 N.M. at 327, 721 P.2d at 395 (stating that in a case where a defendant wishes to represent himself, the trial court must determine if he is making a knowing and intelligent waiver of counsel and fully understands the potential pitfalls of self-representation); *State v. Lewis*, 104 N.M. 218, 220, 719 P.2d 445, 447 (Ct.App.1986).

■ {8} A "knowing and intelligent" waiver of the right to counsel requires a showing that "a defendant who elects to conduct his own defense has some sense of the magnitude of the undertaking and the hazards inherent in self-representation." *Castillo*, 110 N.M. at 57, 791 P.2d at 811; *see also United States v. Padilla*, 819 F.2d 952, 956 (10th Cir.1987) (stating that the task of assessing the defendant's understanding of the requirements and risks of self representation initially falls on the trial court, which "must bear in mind the strong presumption against waiver"). While, "[t]here are no fixed guidelines to determine whether a defendant has 'knowingly and intelligently' waived the right

to counsel," we have created certain instructions for the district courts to follow at a *Faretta* hearing. *Rotibi*, 117 N.M. at 110, 869 P.2d at 298.

■ {9} To determine whether a defendant is making a voluntary, knowing, and intelligent waiver, "the court must inform itself regarding a defendant's competency, understanding, background, education, training, experience, conduct and ability to observe the court's procedures and protocol." *Chapman*, 104 N.M. at 327, 721 P.2d at 395; *Castillo*, 110 N.M. at 57, 791 P.2d at 811 (citing authority for the proposition that the question of an intelligent waiver of the right to counsel turns not only on the state of the record but on the circumstances of the case, and the trial court must consider the "defendant's age and education, previous experience with criminal trials, and representation by counsel before trial"). Further, in *Castillo*, we determined that the trial court must: (1) make "[a] showing on the record ... that a defendant ... has some sense of the magnitude of the undertaking and the hazards inherent in self-representation"; (2) "insure that [a] defendant has been informed of the nature of the charges, the statutory offenses included within them, the range of allowable punishments, possible defenses or mitigating factors that might be available to the defendant"; and (3) "admonish [a defendant] that [those who proceed pro se] will be expected to follow the rules of evidence and courtroom procedure." *Id.* at 57, 791 P.2d at 811; *see Rotibi*, 117 N.M. at 111, 869 P.2d at 299; *see also Sanchez v. Mondragon*, 858 F.2d 1462, 1467 (10th Cir.1988) (stating that assuming a defendant voluntarily chooses self-representation, the trial court must ensure that the defendant has been informed of the nature of the charges, the statutory offenses included within them, the range of allowable punishments, possible defenses or mitigating factors that might be available to the defendant, and it must also admonish the defendant that he or she will be expected to follow the rules of evidence and courtroom procedure); *see generally Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948).

■ {10} The district court should take special care to advise the defendant as to the ramifications of proceeding pro se. In ascertaining whether a defendant is aware of the potential pitfalls of self-representation, appellate courts have suggested that defendants should be informed of at least the following:

(1) that presenting a defense is not a simple matter of telling one's story, but requires adherence to various technical rules governing the conduct of a trial; (2) that a lawyer has substantial experience and training in trial procedure and that the prosecution will be represented by an experienced attorney; (3) that a person unfamiliar with legal procedures may allow the prosecutor an advantage by failing to make objections to inadmissible evidence, may not make effective use of such rights as the voir dire of jurors, and may make tactical decisions that produce unintended consequences; (4) that there may be possible defenses and other rights of which counsel would be aware and if those are not timely asserted, they may be lost permanently; (5) that a defendant proceeding pro se will not be allowed to complain on appeal about the competency of his representation; and (6) that the effectiveness of his defense may well be diminished by his dual role as attorney and accused.

3 Wayne R. LaFave et al., *Criminal Procedure* § 11.5(c), at 574–75 (2d ed.1999) (internal quotation marks and footnotes omitted).

■ {11} In *Godinez v. Moran,* 509 U.S. 389, 400, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993), the Supreme Court noted that "the defendant's technical legal knowledge is not relevant to the determination whether he is competent to waive his right to counsel, and . . . although the defendant may conduct his own defense ultimately to his own detriment, his choice must be honored" (internal quotation marks and citations omitted). "The one certain guideline is that the defendant is not required to have the competency and skill of an attorney to proceed pro se." *Rotibi,* 117 N.M. at 110–111, 869 P.2d at 298–99; *see Faretta,* 422 U.S. at 836, 95 S.Ct. 2525 ("[Defendant's] technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself."). *Faretta* holds only that a defendant choosing self-representation must do so "competently and intelligently." *Id.* at 835, 95 S.Ct. 2525. The Supreme Court stated that a defendant's "technical legal knowledge" is "not relevant" to the determination whether he is competent to waive his right to counsel. *Id.* at 836, 95 S.Ct. 2525. Thus, while "[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts," a criminal defendant's ability to represent himself has no bearing upon his competence to choose self-representation. *Id.* at 834, 95 S.Ct. 2525.

{12} The Supreme Court in *Faretta* held that "[i]n forcing Faretta, under these circumstances, to accept against his will a state-appointed public defender, the California courts deprived him of his constitutional right to conduct his own defense." *Id.* at 836, 95 S.Ct. 2525. We have similarly held that "[w]here a defendant has timely voiced such request [to represent him or herself pro se] and a waiver of court-appointed counsel is knowingly and intelligently undertaken, counsel may not thereafter be forced upon an appellant." *Lewis,* 104 N.M. at 221, 719 P.2d at 448.

**Defendant Voluntarily, Knowingly, and Intelligently Waived His Right to Counsel at the *Faretta* Hearing**

■ {13} "The question of whether Defendant's waiver of counsel was knowing and intelligent is contingent on the facts and circumstances of the case." *Plouse,* 2003–NMCA–048, ¶ 27, 133 N.M. 495, 64 P.3d 522. We conclude in accordance with our case law that Defendant voluntarily, knowingly, and intelligently waived his right to counsel. In this case, the *Faretta* hearing included all of the *Castillo* requirements. Defendant testified that he is thirty-years-old. He stated that he dropped out of high school in the eleventh grade and earned his GED in 1996 while he was incarcerated, and that he had no problems with the English language. He stated that he has had previous experience with the criminal justice system since he was a teenager in that he had been charged with previous felonies and knew what occurred

during a jury trial. He was aware of and understood the charges against him and the extent of punishments and possible range of sentences and enhancements, should he be found guilty of the charges.

{14} Defendant clearly acknowledged the negative aspects of self-representation. This was discussed at the hearing and Defendant had discussed the matter with his appointed counsel, Cosby, prior to the hearing. Defendant clearly stated that he understood the dangers of self-representation. He acknowledged that there are a lot of procedures, obstacles, and limitations that he will not be able to overcome because he is not an attorney and he is incarcerated. He stated that he knew he needed to educate himself about the rules of evidence. Defendant acknowledged that he is

> subjecting myself to losing this case just because I'm representing myself, but I do have an understanding of general court procedure and I pretty much understand that I'm going to be limited in a lot of things in handling my case and that I'm responsible for my own defense and preparation of all my paperworks [sic] and that's regardless of my situation in county jail.

{15} Defendant recognized that there is a problem of testifying and also being his own attorney and that if he proceeded pro se, he would not take the stand. He also was aware of the difficulty in arguing a case and remaining neutral by acknowledging that there was a potential problem with neutrality of evidence and that he would be subject to sanctions if he does not follow court decorum. He was aware of the risk involved in comporting with rules of the district court and that he would be subject to sanctions, including contempt of court, if he failed to conduct himself properly. Cosby admonished Defendant that the prosecutor could take advantage of him because of his lack of understanding and experience with the rules of evidence. Defendant stated that he understood that he would "take that risk" and be responsible for familiarizing himself with court rules and procedures. He knew he would have to make his own record for appeal in order to preserve issues and that by receiving a new trial he would waive his right to appeal his convictions from his first trial in which Gallagher represented him.

{16} Defendant testified that he was never adjudicated mentally incompetent. He was evaluated three times at the Las Vegas Medical Center forensic unit for mental competency to stand trial, and he was always determined competent to stand trial. Defendant stated he was not evaluated for competency in this case. Defendant stated that he was not taking any medication at the time and had no physical impairment or mental restrictions. Defendant stated that he had never ceased in requesting to proceed pro se.

{17} The prosecutor asked Defendant if he knew the difference between leading and non-leading questions and the difference between relevant and irrelevant questions. Defendant indicated that he had researched best evidence and hearsay rules, that he "understand[s] everything that is written in the books," and that while he lacked access to legal materials due to his incarceration, he had the rules on evidence, search and seizure, and general discovery and had some understanding of this material. Finally, Defendant indicated his willingness to accept standby-counsel should the district court determine that it would be appropriate.

{18} Defendant's *Faretta* hearing reveals that in this case, Defendant was clearly advised of the possible hazards and disadvantages of self-representation. He understood the ramifications of proceeding pro se, and he was aware of the charges and possible punishments. Defendant demonstrated that he had a rudimentary understanding of courtroom procedure, the rules of evidence, and rules of the court. He expressed a willingness to comply with court decorum. Defendant's request to represent himself was unequivocal, unwavering, coherent, and calm.

{19} As such, the district court erred in determining that Defendant did not knowingly, and intelligently waive his right to counsel. We have stated that:

> once it has been determined that the waiver of counsel was "knowingly and intelligently" made by a defendant, ... the court had no alternative but to allow Defendant to proceed on his own. To add an addi-

tional test of competency to conduct the trial would effectively take away the right to reject counsel and proceed pro se. Other than defendants trained in the law, few would possess the skills to conduct an effective defense. This is the reason defendants wishing to represent themselves are given the *Castillo* warnings. We note that the trial court has the option of terminating self-representation when a defendant deliberately engages in serious and obstructive misconduct. Further, the court has the right to appoint standby counsel to aid the accused at such time as the accused requests help or to be available to represent the accused if termination of self-representation is necessary.

*Rotibi*, 117 N.M. at 111, 869 P.2d at 298.

{20} As stated above, the fact that Defendant is not an attorney nor has the training or skills of an attorney, should not prevent Defendant from representing himself. Defendant was given the *Castillo* warnings, and the district court conducted a detailed hearing on the issue. While the district court determined that Defendant "at best [has] the superficial understanding" of legal proceedings, according to law, this is not sufficient to prevent Defendant from proceeding pro se even if it is at his own peril.

{21} In this case, Defendant's request to proceed pro se was clear and unequivocal throughout the proceedings. *See* LaFave, *supra* § 11.5(d) at 581. LaFave notes that "[o]nce a clear and unequivocal request is made, *Faretta* suggests only three possible grounds for denying that request." LaFave, *supra* at 582–83. First, *Faretta* stressed that the request in that case was made " 'well before the date of trial.' " *Faretta*, 422 U.S. at 807, 95 S.Ct. 2525; LaFave, *supra*. Here, Defendant made his request before trial began. Second, *Faretta* noted that " 'the trial judge may terminate self-representation by a defendant who . . . engages in serious and obstructionist misconduct.' " *Faretta*, 422 U.S. at 834 n. 46, 95

S.Ct. 2525; LaFave, *supra* at 583. In this case, Defendant was not misbehaving, and was not disruptive in the course of seeking to obtain self-representation, and was agreeable to going along with the district court's rulings. Third, LaFave states that by requiring a valid waiver of counsel as a prerequisite for self-representation, *Faretta* recognized the authority of a trial court to refuse to permit self-representation when, despite its efforts to explain the consequences of waiver, a defendant is unable to reach the level of appreciation needed for a knowing and intelligent waiver. LaFave, *supra* at 584. *Faretta* also makes clear, however, "that a defendant does not need legal expertise nor unusual intelligence to meet its standard of awareness of the dangers and disadvantages of self-representation." LaFave, *supra*.

{22} Our review of the record and proceedings below reveals that the district court erred when in deciding that Defendant was not competent to represent himself, and that Defendant's decision to waive counsel, while voluntary, was not knowing and intelligent. *Cf. Plouse*, 2003–NMCA–048, ¶¶ 20–31, 133 N.M, 495, 64 P.3d 522 (providing a detailed analysis of the record which supported the district court's determination that the defendant's waiver of counsel was knowing and intelligent); *Rotibi*, 117 N.M. at 110–11, 869 P.2d at 298–99.

## CONCLUSION

{23} We remand this case to the district court for a new trial, at which time Defendant may proceed pro se with standby counsel per his request at the *Faretta* hearing.

{24} **IT IS SO ORDERED.**

ROBINSON and KENNEDY, JJ., concur.