# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

STATE OF NEW MEXICO,

  Plaintiff-Appellee,

v.               **NO. 28,579**

DONALD STANLEY,

  Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John Dean, District Judge**

Liane E. Kerr, L.L.C.
Liane E. Kerr
Albuquerque, NM

for Appellant

Gary K. King, Attorney General
M. Victoria Wilson, Assistant Attorney General
Santa Fe, NM

for Appellee

## DECISION

**DANIELS, Justice.**

{1} Defendant Donald Stanley was convicted of the willful and deliberate first-

degree murder of his housemate, Toby Peek, by pouring gasoline on him and setting him on fire. The issues Defendant raises in this direct appeal are whether (1) the district court erred in not allowing him to waive counsel and represent himself, (2) he received ineffective assistance of counsel, and (3) the evidence was insufficient to support his conviction for deliberate first-degree murder. We reject Defendant's claims and affirm his conviction.

**I.      BACKGROUND**

**A.      Factual Overview**

{2}      A week before Toby Peek's death, Peek had invited Defendant to move into his small apartment. Peek, who was unemployed and disabled, suffered from schizophrenia and had a history of alcohol abuse, inhalant abuse, and suicide threats. During the night of February 27, 1998, the two had an argument in which Peek apparently angered Defendant by criticizing him and by getting his cigarettes wet. Neighbor Donovan Dickinson testified that Defendant flagged him down around 1:00 a.m. and caught a ride to a convenience store. Defendant appeared to have been drinking. At the store, Defendant purchased what Dickinson described as one or two cups of gasoline. The store clerk and store records confirmed that Defendant made a gasoline purchase in the total amount of thirty-nine cents. The store clerk later

identified Defendant as the person who made the thirty-nine cent purchase after claiming he had run out of gas.

**{3}** When Dickinson realized that Defendant was buying gasoline by the cupful, he offered Defendant the use of a gasoline can to put gasoline into his car. Defendant responded that he did not have a car. When Dickinson asked him what he needed the gasoline for, Defendant angrily responded, "None of your goddamn business." A short time later, he said to Dickinson, "If you are ever to testify against me, there's going to be a lot of trouble." Dickinson dropped off Defendant at the apartment by 2:00 a.m. One of the last things Dickinson remembers Defendant saying as he got out of the car to walk to his dark apartment with the small quantity of gasoline was that he "may or may not do something bad to somebody tonight."

**{4}** The next events were the subject of the testimony of witness Randy Brittain, who testified to statements Defendant made while they were coincidentally being taken to jail in the same police transport vehicle later that morning, after Brittain was arrested on an unrelated drug charge. Brittain testified about Defendant's description to him of the events surrounding Peek's death. Defendant said that he became angry with Peek for having gotten his cigarettes wet and having called him a sniveler. He told Brittain that he left the apartment and got some gasoline. When he came back to

3

the apartment, he threw it onto Peek and yelled, "Who's sniveling now, you son of a bitch?" He then lit a match and threw it at Peek, setting him on fire. Peek, who had been sitting on the couch, attempted to get to the bathroom to put out the fire, but he collapsed by a closet before he could make it. Defendant told Brittain he then poured some water on Peek to put out the fire after items in the closet began to burn, because he was afraid the entire place would catch on fire.

{5}     Another neighbor, Pasqual Montano, testified that Defendant woke him up around 5:00 a.m., several hours after Dickinson testified he had brought Defendant back from the convenience store with his take-out gasoline. Defendant exhibited the effects of drinking alcohol. His account to Montano was that he had come home that morning and discovered that Peek happened to be on fire at the moment of his arrival. He said that he had thrown water on Peek to try to put out the fire, but he thought Peek was now dead. Montano immediately got dressed and took Defendant back to the apartment, calling 911 from a mobile phone in his truck. He found Peek's burned body inside the apartment. By that time, the body was cold, wet, and stiff. Although it was obvious that a fire had taken place at some point, there were no flames or smoke still present by the time Montano went to the apartment.

{6}     The official investigation confirmed the use of gasoline as an accelerant for the

4

fire. Although Peek's clothing, face, hands, and chest had all been burned, the gasoline appeared to have been poured primarily onto his shoulder and crotch areas. Burn patterns indicated that the fire had originated while Peak was sitting in the center of the couch and had continued as he made his way across the floor to the spot by the closet where he stopped moving and died. A vacuum cleaner in the closet by the body had also caught fire. Used matches on the floor were consistent with matchbooks found in Defendant's jacket. Evidence of the recent presence of gasoline was also found in the living room and kitchen, although no traces were found in the cup in the sink that Dickinson identified as having earlier been used by Defendant to carry the small quantity of gasoline from the convenience store to the apartment. A package of wet cigarettes also was found in the apartment.

{7}     The defense presented its own arson expert to offer his opinion that the fire was caused accidentally by unidentified sources. He disagreed with the State's experts that there was any indication of someone pouring or splashing gasoline on or around the victim. Instead, he suggested that Peek had caught fire from an unknown ignition source after he became saturated by gasoline vapors, which could have occurred if he had been sniffing gasoline.

{8}     The defense also called clinical psychologist Dr. William Foote to testify that

Peek had a long history of schizophrenia, inhalant abuse, other substance abuse, and attempted suicide.

**B.      Procedural Overview**

**{9}**      This is the second time Defendant has appealed a jury verdict and conviction for the murder of Toby Peek.  His first jury trial ended in convictions of first-degree murder and intimidation of a witness.  The conviction for first-degree murder was subsequently reversed for evidentiary errors, the exclusion of expert testimony regarding Peek's suicidal tendencies, and the preclusion of impeachment of a witness regarding a statement about Peek's inhalant abuse. *See State v. Stanley*, 2001-NMSC-037, ¶ 3, 131 N.M. 368, 37 P.3d 85.

**{10}**      At his retrial, Defendant was again convicted by a jury of first-degree willful and deliberate murder.  We review this direct appeal from that conviction pursuant to our exclusive appellate jurisdiction over sentences imposing life imprisonment or death. *See* N.M. Const. art. VI, § 2; Rule 12-102(A)(1) NMRA.

**II.      DISCUSSION OF ISSUES**

**A.      Claim of Erroneous Denial of Self-Representation**

**{11}**      We first address Defendant's argument that the district court erred in not granting his request during trial to discharge his appointed attorney and to represent

himself. In order to assert successfully the right to self-representation, there must first be a knowing, intelligent, and voluntary waiver of a defendant's constitutional right to the assistance of counsel. *State v. Chapman*, 104 N.M. 324, 327, 721 P.2d 392, 395 (1986). We review de novo the question of law involved in making that determination. *See State v. Padilla*, 2002-NMSC-016, ¶ 18, 132 N.M. 247, 46 P.3d 1247 ("Whether a defendant made a valid knowing, intelligent, and voluntary waiver of his constitutional rights is a question of law which we review de novo." (internal quotation marks and citation omitted)); *State v. Plouse*, 2003-NMCA-048, ¶ 21, 133 N.M. 495, 64 P.3d 522 (requiring de novo review of whether a defendant's decision to waive counsel and represent himself was made voluntarily, knowingly, and intelligently).

**{12}** Defendant argues that he validly asserted his right to waive his appointed representation. We evaluate a claim of waiver based on the record, and we indulge every reasonable presumption against waiver of the constitutional right to assistance of counsel. *See State v. Sanchez*, 2000-NMSC-021, ¶ 26, 129 N.M. 284, 6 P.3d 486 (stating most fundamental rights may be waived or lost by an accused, although every reasonable presumption against waiver must be indulged). In determining whether Defendant made a knowing and intelligent waiver of counsel, we must examine the

particular facts and circumstances of the case. *See Plouse*, 2003-NMCA-048, ¶ 27; *State v. Castillo*, 110 N.M. 54, 57, 791 P.2d 808, 811 (Ct. App. 1990) ("The question of an intelligent waiver of the right to counsel turns not only on the state of the record but on the circumstances of the case, including defendant's age and education, previous experience with criminal trials, and representation by counsel before trial.").

{13}     Defendant concedes, and we agree, that the district court made a proper inquiry as to whether he understood the multitude of dangers inherent in self-representation and into his understanding, background, education, training, experience, and expressed willingness to observe court procedures and protocol. We are satisfied that the district court conducted a comprehensive inquiry into Defendant's requests and advised him of the disadvantages and dangers of self-representation in such a serious prosecution with potentially grave consequences. Therefore, the issue before us is not whether the court properly engaged in a proper circumstance-specific inquiry, it is whether the record demonstrates that Defendant responded with the knowing, intelligent, and voluntary waiver of counsel required in order to proceed pro se.

{14}     The record before us does not demonstrate such a waiver. It reflects that Defendant's chief expressed concern was a desire to play a larger role in the presentation of his own defense, rather than a willingness to give up his right to have

8

counsel assist in his defense.

{15}    Throughout the history of this case, Defendant has repeatedly complained about every one of the five court-appointed attorneys who have represented him during his trials and appeals. After one of those attorneys secured a reversal of his first conviction, notwithstanding Defendant's complaints, a third attorney was appointed to represent him for his retrial. At subsequent pretrial proceedings, Defendant complained about the new trial attorney and succeeded in having him replaced by yet another appointed attorney, who ultimately tried the case.

{16}    Because a pro se defendant is precluded from complaining on appeal that ineffective self-representation amounts to a denial of effective assistance of counsel, courts require that the demand to defend pro se must be stated unequivocally. *See State v. Reyes*, 2005-NMCA-080, ¶ 10, 137 N.M. 727, 114 P.3d 407. Despite Defendant's persistent complaints that his appointed lawyers failed to follow his directions as to how he wanted the case to be handled and had engaged in "professional manipulation," he repeatedly made it clear that he did not wish to proceed to trial without the assistance of appointed counsel. He stated, for example, "I don't have any aspirations of representing myself all the way. I need a lawyer on these matters because they're so crucial." While Defendant may not have felt

personally satisfied with any of his court-appointed attorneys, mere discontent with counsel does not serve as a clear and unequivocal assertion of his right to represent himself. *See State v. Sisk*, 79 N.M. 167, 169, 441 P.2d 207, 209 (1968) (providing a defendant "cannot prevail on an otherwise baseless claim because of dissatisfaction with counsel."); *see also State v. Salazar*, 81 N.M. 512, 514, 469 P.2d 157, 159 (Ct. App. 1970) (stating mere dissatisfaction with court-appointed counsel does not require court to discharge counsel and appoint new counsel).

{17}     In *State v. Vincent*, 2005-NMCA-064, ¶ 22, 137 N.M. 462, 112 P.3d 1119, the Court of Appeals held that a defendant validly waived his Sixth Amendment right to counsel where the record clearly indicated he made a knowing, intelligent, and voluntary waiver. After the *Vincent* trial court made a careful and thorough examination of the facts and circumstances of the defendant's case, including his background, experience, conduct, and ability to observe the court's procedures and protocol, the defendant made it clear that he was consciously choosing to proceed without any assistance of counsel because he was certain he knew his case best and would present the most effective defense. *Id*. ¶ 20. Vincent also verbally concurred with the granting of his counsel's motion to withdraw, and he acknowledged his choice to represent himself was not as a result of being dissatisfied with counsel or

because he could not find alternative counsel. *Id*. ¶¶ 20-21; *see also Reyes*, 2005-NMCA-080, ¶ 18 (holding valid waiver where request was "unequivocal, unwavering, coherent, and calm" throughout the proceedings).

{18}    Unlike the situation in *Vincent*, the circumstances of this case reflect that Defendant expressly realized that he could not adequately represent himself without the assistance of an attorney. At every juncture where Defendant "fired" his counsel or expressed a desire to play a larger role in the presentation of the defense, he also expressed an equal desire to have counsel assist him in doing so. This is not the kind of unequivocal and unconditional waiver of the right to counsel required in order to forego the constitutionally-guaranteed right to assistance of counsel. *See State v. Lewis*, 104 N.M. 677, 682, 726 P.2d 354, 359 (Ct. App. 1986) (vacillating as to whether to proceed pro se or have the services of court-appointed counsel inconsistent with an unequivocal waiver of counsel and assertion of the right to self-representation).

{19}    Not only did Defendant fail to unequivocally waive his right to assistance of counsel, he demonstrated that he was not eligible to proceed pro se by his disruptive behavior. The district court, although not required to do so by law, made extraordinary attempts to try to accommodate Defendant's desire to participate as "co-

11

counsel" with his appointed lawyer. *See State v. Martinez*, 95 N.M. 421, 422-23, 622 P.2d 1041, 1042-43 (1981) (providing there is no constitutional right that permits a defendant to act as co-counsel in conjunction with one's appointed counsel). The court even allowed Defendant to attempt cross-examination of a key witness. That experiment ended in failure. Defendant repeatedly misquoted the witness's direct testimony and improperly referred to purported facts that were not properly part of the record. Finally, after several unsuccessful admonitions, the court found it necessary to stop Defendant's active participation in the cross-examination, turning the witness over to appointed defense counsel for a proper cross-examination. This episode underscored the unreadiness and ineligibility of Defendant to represent himself. The right to proceed pro se is not a license to manipulate the court, introduce error, engage in dilatory tactics, or ignore either substantive law or rules of procedure. *See Castillo*, 110 N.M. at 57, 791 P.2d at 811 (noting self-representation requires a defendant to "follow the rules of evidence and courtroom procedure"); *Reyes*, 2005-NMCA-080, ¶ 21 (noting a defendant may not misbehave or be "disruptive in the course of seeking to obtain self-representation"); *State v. Rotibi*, 117 N.M. 108, 111, 869 P.2d 296, 299 (Ct. App. 1994) (stating self-representation may be terminated if a defendant "deliberately engages in serious and obstructive misconduct").

{20}     The district court specifically found that Defendant was disruptive and was unwilling or unable to abide by rules of procedure and courtroom protocol.  After several legitimate objections by the State to Defendant's improper cross-examination, Defendant blurted out in open court that his counsel was "fired."  The court was compelled to stop the proceedings, dismiss the jury, and address Defendant's outburst.  Exacerbated, the judge told Defendant that the court and counsel for both sides had "bent over backwards" to give him a fair trial.  Both the court and his counsel repeatedly explained the rules regarding prior testimony, but Defendant nevertheless failed to follow the rules and disrupted the trial in the process.

{21}     Defendant's claim that the district court erred in denying his request to represent himself therefore fails for two independent reasons:  (1) he did not clearly and unequivocally waive his constitutional right to the assistance of counsel, and (2) his disruptive behavior would have forfeited any right to proceed pro se, even if he had validly waived his right to counsel.

**B.     Claim of Ineffective Assistance of Counsel**

{22}     Defendant also contends that his representation by appointed counsel fell below the standards of the right to effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article II, Section 14 of the New

13

Mexico Constitution. We disagree and hold that the assistance Defendant received was not constitutionally deficient.

{23} To prevail on a claim of ineffective assistance of counsel, a defendant must establish: (1) that counsel was ineffective, in that his representation fell below the objective standard of a reasonably competent attorney, as measured by professional norms and (2) that he was prejudiced, in that the result would have been different had it not been for the attorney's deficient performance. *State v. Schoonmaker*, 2008-NMSC-010, ¶ 32, 143 N.M. 373, 176 P.3d 1105. "The prejudice must be of sufficient magnitude to call into question the reliability of the trial results." *State v. Jacobs*, 2000-NMSC-026, ¶ 48, 129 N.M. 448, 10 P.3d 127.

{24} Defendant's brief does not point to any facts in the record that show defense counsel's performance fell below that of a reasonably competent attorney or that but for counsel's deficient performance the proceeding would have been different. In addition, our own review of the record before us reflects that trial counsel's performance exceeded the standards required of reasonably competent counsel. Counsel performed his professional duties at every stage of the proceedings. He actively participated in voir dire of the jury, made an opening statement, conducted direct and cross-examination of witnesses, made evidentiary objections and legal

14

arguments, reluctantly brought Defendant's motion to withdraw to the district court's attention, struggled to accommodate Defendant's desire to participate more in counsel's presentation of the defense, participated in settling of jury instructions, and delivered a closing argument.

{25} Without specifics, Defendant's attack seems to be a generalized complaint that counsel disagreed with some of Defendant's notions regarding the best way in which to present an effective defense, to call certain witnesses, and to ask particular questions that Defendant demanded be asked.

{26} Generally, decisions concerning the conduct of the trial and trial tactics lie with the lawyer. *See State v. Henry*, 101 N.M. 277, 280, 681 P.2d 62, 65 (Ct. App. 1984). Although defense counsel certainly should consider the preferences of the client, it is both the right and the professional responsibility of the attorney to make final decisions about which witnesses should be called, whether and how to conduct cross-examination, which jurors to accept or strike, what motions should be made, what evidence should be introduced, and similar tactical matters that arise out of the representation. *See State v. Singleton*, 2001-NMCA-054, ¶ 13, 130 N.M. 583, 28 P.3d 1124. If counsel did not have the ultimate responsibility for making such professional decisions and could be required instead to set aside his or her professional judgment

15

to accede to the client's opposing demands on tactical matters, the entire inquiry into whether a defendant had validly waived his right to effective assistance of counsel would be reduced to a meaningless exercise. If counsel is to perform the function of effective counsel, he or she must be able to make the necessary professional decisions attendant upon that responsibility.

{27} Defendant does not suggest that he was denied the right to make any one of the non-tactical and very personal decisions that are within the exclusive right of the client to exercise in a criminal case, such as whether or not to plead guilty, whether or not to waive a jury, and whether or not to take the witness stand. *See State v. Bonilla*, 2000-NMSC-037, ¶¶ 7, 13, 130 N.M. 1, 15 P.3d 491; *Singleton*, 2001-NMCA-054, ¶ 12.

{28} Despite this established allocation of decisional rights and responsibilities between attorney and client, counsel went to great lengths to try to comprehend and accommodate the various demands of his client. Our review of the record persuades us that the district court was correct in holding that Defendant was permitted to have his views considered in every aspect of his trial. On several occasions, the judge noted for the record that Defendant participated in every bench conference and discussion, was allowed to submit questions to be asked by counsel, conferred with

counsel, and reviewed the evidence at trial. The record also supports the observation of the district court that the defense was marked by "vigorous cross-examination of every witness," "vigorous opposition at appropriate times," and "vigorous participation of [Defendant]."

**{29}** With regard to his complaint that some witnesses were not called, Defendant does not advance which specific witnesses were precluded from testifying, nor why their absence would have prejudiced the result. *See State v. Weber*, 76 N.M. 636, 644, 417 P.2d 444, 449 (1966) ("We will not search the record in an effort to try to determine what appellant has in mind."). To the extent this Court can understand Defendant's complaint that his counsel failed to call certain witnesses and issue subpoenas, we conclude the matter was properly addressed by the district court. While Defendant, at a point close to the end of trial, did vociferously complain to the judge about an assortment of witnesses not called by his counsel, the judge did not rule they could not appear. He merely told Defendant that if the witnesses were readily available, and a credible explanation could be offered as to why they should testify, he would consider allowing their testimony. The judge did scold Defendant that these witnesses had not been brought to the court's attention in a timely manner in any of Defendant's numerous communications and complaints to the court on

17

various occasions. Defendant has not alerted us to any point in the record where he pursued the matter further. In any event, since Defendant was not proceeding pro se, a tactical or strategic decision as to whether to call specific witnesses is ordinarily not viewed as a lapse in professional representation. *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289; *see Jacobs*, 2000-NMSC-026, ¶ 49 ("An attorney's decision to object to testimony or other evidence is a matter of trial tactics.").

{30} As to Defendant's argument that his attorney failed to ask questions requested by him, Defendant does not explain what questions his counsel failed to ask and how this information would have aided in his defense. *See State v. Martinez*, 2007-NMCA-160, ¶¶ 22-24, 143 N.M. 96, 173 P.3d 18 (requiring that an ineffective assistance claim be supported by a showing of how counsel's performance prejudiced the defense). The record does not support Defendant's complaint that his attorney failed to present both the accidental death and suicidal death theories that Defendant urged counsel to present. The record affirmatively reflects the opposite. Although counsel expressed misgivings about presenting both of these potentially conflicting defenses, he ultimately acceded to Defendant's wishes to call both Dr. Foote and the defense arson expert to support both theories demanded by Defendant. Defendant makes no claim that counsel's acquiescence to his demand constituted ineffective

18

assistance of counsel, and we therefore have no reason to consider whether the decision to do so was within the range of permissible tactical choices available to counsel.

{31} Counsel complied with Defendant's desire to participate in his own defense and effectively permitted Defendant to have a great deal of input into its organization and content. Counsel made repeated efforts to accommodate Defendant's concerns and instructions throughout and was forthright with the court about Defendant's disagreements regarding counsel's use of trial tactics and the calling of witnesses. After Defendant's equivocal demand that counsel withdraw and participate only on a standby basis, counsel attempted to assist Defendant in the event Defendant's request was granted. He informed the court that he had prepared voir dire questions and outlines of witnesses that Defendant could use, and he offered to assist Defendant to whatever extent possible. In sum, counsel made extraordinary efforts to consider Defendant's wishes, while carrying out his own professional responsibilities to provide effective assistance of counsel.

{32} The fact that the twelve members of the jury concluded beyond a reasonable doubt that Defendant was guilty of first-degree murder cannot be ascribed to the performance of Defendant's counsel that is reflected in this record. We therefore

19

reject Defendant's ineffective assistance claim and turn to the question whether the evidence supports the verdict.

**C.      Claim of Insufficiency of the Evidence**

**{33}**      Defendant also argues that there was insufficient evidence on the intent element of the charge of first-degree deliberate murder to support the jury's guilty verdict. We disagree and hold the evidence was sufficient to support his first-degree murder conviction.

**{34}**      Our sufficiency of the evidence review "'is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction.'" *State v. Rudolfo*, 2008-NMSC-036, ¶ 29, 144 N.M. 305, 187 P.3d 170 (quoting *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988)). Evidence is reviewed "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "The question before us as a reviewing Court is not whether we would have had a reasonable doubt but whether it would have been impermissibly unreasonable for a jury to have concluded otherwise." *Rudolfo*, 2008-NMSC-036, ¶ 29; *see State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M.

438, 971 P.2d 829 ("[D]etermining the sufficiency of evidence does require appellate court scrutiny of the evidence and supervision of the jury's fact-finding function to ensure that, indeed, a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction." (internal quotation marks and citation omitted)). "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject Defendant's version of the facts." *Rojo*, 1999-NMSC-001, ¶ 19.

{35}   Defendant argues that the trial evidence supported his claim to neighbor Pasqual Montano, in one of his versions of the events, that he poured water on Toby Peek's burning body in an attempt to save his life, rather than for the purpose of keeping the fire from spreading. Therefore, he argues, there is insufficient evidence to support the jury's finding that he had the requisite deliberate intent to kill for a first-degree murder conviction. However, the jury also heard the testimony of Randy Brittain that Defendant admitted to him that same morning that he poured water on Peek to prevent the fire from spreading, rather than to protect Peek from his death. The jury was free to accept or reject either of Defendant's inconsistent accounts presented in the testimony. In particular, the jury heard evidence of Defendant's own incriminating statements and actions and the substantial physical corroboration at the

scene. In light of the totality of evidence, the admissions that he made to Brittain of deliberately going out and buying gasoline, setting Peek on fire over a pack of wet cigarettes, and Peek's disrespectful attitude to Defendant, were much more plausible than the "Peek happened to be on fire when I came home" version he told Montano.

{36}     We therefore reject Defendant's argument that there was insufficient evidence to support the finding by the jury that he possessed the requisite deliberate intent to commit first-degree murder.

## III.     CONCLUSION

{37}     Based on our determinations that the trial court did not err in rejecting Defendant's request to waive assistance of counsel and represent himself, that he has not established a claim of ineffective assistance of counsel, and that the evidence supports the finding by the jury that he killed Toby Peek with deliberate intent, Defendant's conviction for first-degree murder is affirmed.

{38}     **IT IS SO ORDERED.**

_____
                         **CHARLES W. DANIELS, Justice**

**WE CONCUR**:

22

_____
**EDWARD L. CHÁVEZ, Chief Justice**


_____
**PATRICIO M. SERNA, Justice**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**RICHARD C. BOSSON, Justice**