# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>October 12, 2017</u>

**NO. A-1-CA-34597**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**BRIAN ADAMO,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Raymond L. Romero, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**VIGIL, Judge.**

{1} The motion for rehearing is denied. The formal opinion filed in this case on August 31, 2017, is hereby withdrawn, and this opinion is substituted in its place.

{2} A jury found Defendant Brian Adamo guilty of one count of sexual exploitation of children (possession) in violation of NMSA 1978, Sections 30-6A-3(A) (2007, amended 2016), under the Sexual Exploitation of Children Act (the Act), NMSA 1978, §§ 30-6A-1 to -4 (1984, as amended through 2016). This is commonly known as possession of child pornography. Defendant appeals, and concluding there was no reversible error in Defendant's trial, we affirm.

**BACKGROUND**

{3} Following a preliminary hearing in the magistrate court in Carlsbad, New Mexico, the district attorney filed a criminal information in the district court charging Defendant with eighteen counts of sexual exploitation of children (possession) in violation of Section 30-6A-3(A). Pursuant to *State v. Olsson*, 2014-NMSC-012, 324 P.3d 1230, an amended criminal complaint was then filed charging Defendant with a single count of sexual exploitation of children (possession). At trial, the evidence established the following facts.

{4}   Every internet subscriber has a unique Internet Protocol (IP) address that is assigned by the subscriber's internet provider and corresponds with the subscriber's residential address. Carlsbad Police Department Detective Blaine Rennie, who investigates crimes against children, testified that in March 2012, using software that detects IP addresses that have downloaded images of suspected child pornography and computers that are sharing such files, he detected "an exorbitant amount of downloads" of images that were identified as child pornography. The software monitors "SHA1 numbers," unique number-letter combinations that are assigned to images when they are uploaded to the internet. Specifically, the software detects SHA1 numbers that are associated with child pornography and computers that are sharing such files, known as "peer-to-peer sharing." The downloads belonged to an IP address where similar downloads had been detected in March 2011. There were more than nine hundred downloads of suspected child pornograpy in a year at this IP address, and the majority were determined to be images of child pornography.

{5}   Detective Rennie contacted Agent Owen Pena of the New Mexico Attorney General's Office and asked him to try to obtain images from a single source at that IP address. This is possible because images that one is willing to share with others are downloaded and stored in the shared folder of the owner's computer using peer-to-peer software. Agent Pena explained that a person using peer-to-peer software must

download an image to the owner's computer, then direct that the image be placed in the shared folder of the computer; otherwise, the image cannot be accessed by another party. The image may be seen before it is downloaded and then saved in the shared folder.

{6} On April 6, 2012, Agent Pena succeeded in downloading five images of child pornography from the shared folder of a computer at the IP address. Four of these images were admitted into evidence, and all of them had the same "pre-teen hard core" (PTHC) search term. Agent Pena said that images such as those he retrieved would be found in a file-sharing network, using known search terms for child pornography such as "PTHC." Normal search engines such as Google or Yahoo filter and "block" search terms for hard core child pornography images. With assistance from Agent

3

Lisa Keyes of the Department of Homeland Security, Detective Rennie learned that the name and address of the account holder was Defendant's mother at a residential address in Carlsbad.

{7} On June 19, 2012, a search warrant was executed at the home associated with the IP address. Defendant, his mother, and his father were at home. Defendant's bedroom appeared as if he did not often leave the room, and it was described as messy, in "disarray," with pizza boxes, tissues, food items, clothes strewn about, and sexual paraphernalia consisting of penile extenders, penile pumps, sex toys, and pills. Defendant also had an operating computer in his bedroom with two hard drives, one of which was an external hard drive. The computer was on at the time, depicting a story with child characters and "sexual overtones."

{8} There were many computers in the home because Defendant's father operated a computer repair business, and all the computers were seized. While some were non-functional and could not be analyzed, Agent Victor Sanchez of the New Mexico Department of Homeland Security searched all of the undamaged computers and devices for pornography and child pornography. The only pornography he found was on the external hard drive from Defendant's room. Agent Sanchez testified that the

4

external hard drive contained massive amounts of non-child pornography, including bestiality and cartoon pornography, which was highly organized and categorized by type, actors, and the like. Agent Sanchez did not find a category for child pornography, nor did he find evidence that there ever had been one.

{9} Agent Sanchez did not find any active or accessible child pornography when he searched the external drive. However, using a process called "data carving," he did find child pornography in the deleted files. Agent Sanchez described "data carving" in layman's terms. He said to think of a computer as a library with books. The computer's master file table (MFT) is analogous to the card catalog in a library and it tells the computer where the books are in the library. When the computer wants to find something, it does not go through all its rows looking for the book, but it goes to the MFT (the card catalog) that points to where the book is supposed to be, and gets it. When a file is "deleted," people have a misconception that the file is gone, but it isn't. The computer only goes into the card catalog and rips up the index card that told the computer where the file could be found. The book is still in the library, but the function of the card catalog telling the computer where the book is located is gone. Data carving tells the computer to go through every aisle in the library and look for images that were deleted, and the images are then recovered. Using this process, Agent Sanchez was able to retrieve approximately fifty-two images containing child

pornography, and twelve were admitted into evidence. These were different from the four images admitted into evidence that were obtained by Agent Pena. The same analysis was performed on the computer belonging to Defendant's parents, and no images of child pornography were found.

{10}   Defendant did not testify, and he did not present any evidence. Additional facts, necessary to address Defendant's arguments, are set forth in our analysis of Defendant's arguments.

## II.   DISCUSSION

{11}   Defendant argues on appeal that the judgment and sentence must be reversed because: (1) there was insufficient evidence to support the verdict; (2) there was fundamental error in the jury instructions; (3) the district court abused its discretion in admitting sexual items found in Defendant's bedroom; (4) the evidence about Defendant refusing to speak to the police was improperly admitted; (5) ineffective assistance of counsel; and (6) other errors. We address each argument in turn.

### 1.   Sufficiency of the Evidence

{12}   Defendant contends that the evidence was not sufficient for a rational jury to conclude beyond a reasonable doubt that Defendant intentionally possessed child pornography, as required by Section 30-6A-3(A). We disagree.

**{13}** "Evidence is sufficient to sustain a conviction when there exists substantial evidence of a direct or circumstantial nature to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Smith*, 2016-NMSC-007, ¶ 19, 367 P.3d 420 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). "In reviewing whether there was sufficient evidence to support a conviction, [appellate courts] resolve all disputed facts in favor of the [s]tate, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *Id.* (internal quotation marks and citation omitted); *see State v. Myers*, 2009-NMSC-016, ¶¶ 7, 13, 146 N.M. 128, 207 P.3d 1105 (setting forth the standard for reviewing evidence for sufficiency in a bench trial). We have already set forth what the pertinent evidence was at trial.

**{14}** The evidence supports the jury's finding that sometime in the past Defendant knowingly possessed child pornography. The evidence showed that there were more than nine hundred

7

downloads of suspected child pornography in a year to the IP address used by Defendant's computer, and most were determined to be images of child pornography. In March 2012, exorbitant amounts of child pornography were being downloaded to that same IP address. Images of child pornography can only be obtained from a file sharing network where search terms such as "PTHC" are used. The following month, on April 6, 2012, Agent Pena used peer−to−peer software to retrieve five images of child pornography from the shared folder of a single computer at the same IP address. A person using peer−to−peer software downloads the image to the owner's computer where it can be viewed. Then, in order to share the image with other computers, the owner either

purposefully directs the image to be saved in the shared folder of the computer, or sets up the peer-to-peer software to automatically save images to the shared folder. The image can then be accessed by other computers with peer-to-peer software, such as Agent Pena's. Four of the images Agent Pena obtained were admitted into evidence, and all of them had the same search term "PTHC."

{15} Two months later, on June 19, 2012, a search warrant was executed at the physical address where the IP address was located. There were several computers at the home because Defendant's father operated a computer repair business at the home. Agent Sanchez searched all of the undamaged computers and devices for pornography and child pornography, and pornography was found only on the external hard drive of Defendant's computer. The external drive had massive amounts of non-child pornography, which was highly categorized. Although Agent Sanchez did not find any active child pornography that could be accessed on the computer, by using a process called "data carving" he was able to retrieve approximately fifty-two images

of child pornography that had been "deleted" from the hard drive, and twelve of these images were admitted into evidence. A similar process failed to disclose any child pornography images on the computer belonging to Defendant's parents.

{16}     A rational jury could fairly conclude from the foregoing evidence that there was a single computer at the IP address downloading massive amounts of pornography. Child pornography was also downloaded using peer-to-peer software. Child pornography is only accessible through a file sharing network with search terms specific to child pornography, and it can only be accessed by other users of peer-to-peer software if it is purposefully stored in a shared folder. From the shared folder of that single computer at the IP address, Agent Pena was able to retrieve five images of child pornography using peer-to-peer software on April 6, 2012. Two months later, on June 19, 2012, approximately fifty-two deleted images of child pornography were found on the external hard drive of Defendant's computer. The jury was able to look at the images retrieved by Agent Pena and Agent Sanchez, and following the instructions given by the district court, determine for itself whether the images were child pornography.

{17}   We cannot overlook the fact that when the search warrant was executed, and an agent went into Defendant's room, his computer was on, depicting children in a story with "sexual overtones." In *People v. Jaynes*, 2014 IL App (5th) 120048, ¶ 57, 11 N.E.3d 431, the court held that such evidence was admissible "to show intent, knowledge, and absence of mistake or accident." "The defendant's demonstrated interest in materials dealing with children engaged in sexual acts tended to show that his accessing illicit images was knowing and voluntary rather than inadvertent." *Id.*

{18}   Under all the evidence, a fair inference is that the sole computer at the IP address that was used to download and share child pornography was Defendant's, and that Defendant had knowingly obtained, manipulated, stored, and shared the child pornography using his computer.

> In the context of prior possession of child pornography, a computer user knowingly possesses the contraband when the user intentionally downloads child pornography to the computer but later deletes the file or when he or she performs some function to reach out and select the image from the Internet. Indeed, a computer user who intentionally accesses child pornography images on a website gains actual control over the images, just as a person who intentionally browses child pornography in a print magazine knowingly possesses those images, even if he later puts the magazine down.

*New v. State*, 755 S.E.2d 568, 575 (Ga. Ct. App. 2014) (footnotes and internal quotation marks omitted); *see State v. Santos*, 2017-NMCA-___, ¶ 14, ___ P.3d ___, (No. 35,175, June 21, 2017) (concluding that by downloading, viewing, and deleting

videos on his computer, the defendant possessed child pornography); *Wise v. State*, 364 S.W.3d 900, 907 (Tex. Crim. App. 2012) (concluding that the evidence was sufficient for the jury to find that the defendant knowingly and intentionally possessed child pornography images before they were deleted); *see also State v. Brown*, 1984-NMSC-014, ¶ 12, 100 N.M. 726, 676 P.2d 253 ("A material fact may be proven by inference."); *State v. Stefani*, 2006-NMCA-073, ¶ 39, 139 N.M. 719, 137 P.3d 659 (stating that a jury is free to draw inferences from the facts necessary to support a conviction).

{19}     Defendant argues that because experts conceded that, in certain instances, it is possible for child pornography to be "unwittingly" downloaded; that Defendant's computer was not directly tied to the images Agent Pena downloaded; that it was possible for Agent Pena to have accessed any computer being repaired; that there is no evidence that the images retrieved by Agent Sanchez were the same ones Agent Pena downloaded; and that just because images had, at one time, been downloaded to the external drive, does not in and of itself demonstrate that they were knowingly or intentionally downloaded and then intentionally kept. In other words, Defendant asserts that the evidence was lacking. These are all matters that the jury was free to accept or reject in its consideration and weighing of the evidence. *See State v. Tapia*, 2015-NMCA-048, ¶ 12, 347 P.3d 738 (stating that determining the weight and effect

12

of evidence is reserved to the jury as the fact-finder). In finding Defendant guilty, the jury rejected the propositions and conclusion that Defendant advances, and it is not within our purview to "re-weigh the evidence to determine if there was another hypothesis that would support innocence[.]" *State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72. Defendant also argues that because Agent Sanchez conceded that there was no indication Defendant could retrieve the deleted files or that he had exercised any control over the deleted files other than to delete them, the evidence is insufficient. Under the totality of the evidence presented, we disagree. *See State v. Schuller*, 843 N.W.2d 626, 637 (Neb. 2014) ("It seems reasonable to infer that [the defendant] deleted the files to hide evidence of his earlier knowing possession" of child pornography).

{20} The jury was instructed that it had to find Defendant possessed child pornography on or about April 6, 2012, and/or June 12, 2012. We conclude that the evidence was sufficient for a rational jury to find beyond a reasonable doubt that Defendant intentionally possessed child pornography on both of these dates.

**2.      Fundamental Instructional Error**

{21} Defendant did not object to the jury instructions in the district court, and he therefore waived his right to argue that reversible error in the instructions requires a new trial. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must

13

appear that a ruling or decision by the trial court was fairly invoked."). Defendant can only prevail on appeal by demonstrating that the jury instructions as given constitute fundamental error. *See State v. Sandoval*, 2011-NMSC-022, ¶ 13, 150 N.M. 224, 258 P.3d 1016 (stating that if error in the jury instructions was not preserved in the district court, the appellate court reviews the instructions for fundamental error rather than reversible error).

{22} In *State v. Anderson*, 2016-NMCA-007, ¶ 9, 364 P.3d 306, this Court set forth the standard for determining whether a jury verdict may be set aside for fundamental error in jury instructions as follows:

> [W]e first apply the standard for reversible error by determining if a reasonable juror would have been confused or misdirected by the jury instructions that were given. Juror confusion or misdirection may stem from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law. If we determine that a reasonable juror would have been confused or misdirected by the instructions given, our fundamental error analysis requires us to then review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the defendant's conviction was the result of a plain miscarriage of justice. If such a miscarriage of justice exists, we deem it fundamental error.

(Alteration, internal quotation marks, and citations omitted); *see also Sandoval*, 2011-NMSC-022, ¶¶ 13, 15, 20, 21 (describing the foregoing analytical framework for determining fundamental error in the jury instructions).

14

{23} We begin with an analysis of the statutory elements. The Act uses precisely defined terms to describe what is commonly understood to be pornography. Pornography under the Act is "any obscene visual or print medium" that depicts "any prohibited sexual act[.]" Section 30-6A-3(A).[1] Using these defined terms, Section 30-

---

[1]Section 30-6A-2 states:

As used in the Sexual Exploitation of Children Act . . . :

    A.   "prohibited sexual act" means:

        (1) sexual intercourse, including genital-genital, oral-genital, anal-genital or oral-anal, whether between persons of the same or opposite sex;
        (2) bestiality;
        (3) masturbation;
        (4) sadomasochistic abuse for the purpose of sexual stimulation; or
        (5) lewd and sexually explicit exhibition with a focus on the genitals or pubic area of any person for the purpose of sexual stimulation;

    B.   "visual or print medium" means:

        (1) any film, photograph, negative, slide, computer diskette, videotape, videodisc or any computer or electronically generated imagery; or
        (2) any book, magazine or other form of publication or photographic reproduction containing or incorporating any film, photograph, negative, slide, computer diskette, videotape, videodisc or any computer generated or electronically generated imagery;

    . . . .

15

6A-3(A) sets forth the elements of sexual exploitation of children (possession) as follows:

> It is unlawful for a person to intentionally possess any obscene visual or print medium depicting any prohibited sexual act or simulation of such an act *if* that person knows or has reason to know that the obscene medium depicts any prohibited sexual act or simulation of such act *and if* that person knows or has reason to know that one or more of the participants in that act is a child under eighteen years of age.

(Emphasis added). Stated in plain language, and broken down into its constituent parts, Section 30-6A-3(A) makes it a crime to: (1) "intentionally possess" a "visual or print medium" such as a photograph or computer image that depicts pornography if: (2) a person "knows or has reason to know" that the medium depicts any "prohibited sexual act;" and (3) the person "knows or has reason to know that one or more of the participants in that act is a child under eighteen years of age." In other words, it is not a crime under Section 30-6A-3(A) to intentionally possess pornography. However, it is a crime if a person intentionally possesses pornography

---

E. "obscene" means any material, when the content if taken as a whole:

(1) appeals to a prurient interest in sex, as determined by the average person applying contemporary community standards;
(2) portrays a prohibited sexual act in a patently offensive way; and
(3) lacks serious literary, artistic, political or scientific value.

16

and that person "knows or has reason to know" that one or more of the participants in the pornography "is a child under eighteen years of age."

{24} The jury was instructed on the essential elements of possession of child pornography as follows:

> For you to find [D]efendant committed the act of sexual exploitation of children (possession) as charged in Count 1, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. [D]efendant had any obscene visual medium in his possession;
>
> 2. [D]efendant knew the obscene medium depicted a prohibited sexual act[2];
>
> 3. [D]efendant knew or had reason to know that one of the participants was under the age of eighteen years of age;
>
> 4. This happened in New Mexico on or about the 6th day of April, 2012, and/or the 19th day of June, 2012.

Defendant contends the instructions suffer from fundamental error in three respects in that they do not: (1) require a finding that Defendant "intentionally possessed" child pornography as required by Section 30-6A-3(A); (2) require a finding of recklessness, the scienter required by the First Amendment; and (3) inform the jury

---

[2] We note that this instruction required the jury to find that Defendant "knew" the obscene visual medium depicted a sexual act, a higher standard than what is required by Section 30-6A-3(A), that a person "knows or has reason to know" such a fact.

17

that merely deleting the images from the computer is not legally sufficient to constitute possession. We now turn to these arguments.

## A.     Intentional Possession

{25}     Defendant first argues that Section 30-6A-3(A) requires a person to "intentionally possess" child pornography and that the instructions erroneously omitted this *mens rea* requirement. Specifically, Defendant contends that because the instruction only required the jury to find that Defendant had child pornography "in his possession," rather than with a specific intent to "intentionally possess" child pornography, it is fundamentally flawed. We disagree.

{26}     Defendant's argument overlooks the structure of the statute and other instructions given to the jury. The jury was instructed, first, that it had to find that Defendant "had any obscene visual medium in his possession[.]" There is no dispute that each of the computer images admitted into evidence constitute an "obscene visual medium" that depicts a "prohibited sexual act," that is, that they depict pornography. The jury was given an instruction on "possession" that conforms with UJI 14-130 NMRA as follows:

> A person is in possession of an obscene visual medium when, on occasion in question, he knows what it is, he knows it is on his person or in his presence and he exercises control over it.
> Even if the object is not in his physical presence, he is in possession if he knows what it is and where it is and he exercises control over it.

> A person's presence in the vicinity of the object or his knowledge of the existence or the location of the object is not, by itself, possession.

This instruction required the jury to find that Defendant knew he had pornographic computer images, that he knew they were on his person or in his presence, and that he exercised control over them. In order to find "possession" under this instruction, the jury necessarily had to find that the possession was "knowing." *See People v. Kent*, 970 N.E.2d 833, 839 (N.Y. 2012) (noting that "[t]he exercise of dominion or control is necessarily knowing" (alteration, internal quotation marks and citation omitted)). The jury was also instructed that it was required to find that Defendant "acted intentionally" and that "[a] person acts intentionally when he purposely does an act which the law declares to be a crime." This instruction therefore required the jury to additionally find that it was Defendant's purpose to possess the pornography. Taken together, these instructions required the jury to find that Defendant "intentionally" possessed the pornography; that is, Defendant's possession of the pornography was both intentional and knowing.

{27}  It would have been preferable for the first paragraph of the jury instructions to require a finding that Defendant "intentionally had any obscene visual medium in his possession," but as we have pointed out, omitting the word "intentionally" would not cause jury confusion or misdirection because the instructions actually required the jury to find that Defendant's possession of the child pornography was intentional.

19

Jury instructions are "sufficient if they fairly and correctly state the applicable law." *State v. Rushing*, 1973-NMSC-092, ¶ 20, 85 N.M. 540, 514 P.2d 297. Since there was no reversible error, it follows that there was no fundamental error in the instructions.

**B.      Scienter Requirement Under the First Amendment**

{28}      Secondly, Defendant argues that the essential elements instruction requiring the jury to find that Defendant "knew or had reason to know" that one of the participants was under the age of eighteen years is inconsistent with the requirement that he act intentionally and the minimum scienter required by the First Amendment to the United States Constitution, which Defendant contends is recklessness. We have already determined that the essential elements instruction complies with the statutory requirement of "intentional possession" of a medium, visual or print, that depicts obscenity. This is separate from the additional statutory requirement that a person "knows or has reason to know that one or more of the participants in that act is a child under eighteen years of age." Section 30-6A-3(A). We therefore turn to Defendant's argument that the instruction on this element is flawed with fundamental error because it does not require the jury to find recklessness, which Defendant contends the First Amendment requires.

{29}      Possession of child pornography is not protected by the First Amendment. *See Osborne v. Ohio*, 495 U.S. 103, 111 (1990). States have a compelling interest in

"safeguarding the physical and psychological well-being of a minor" and "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *New York v. Ferber*, 458 U.S. 747, 756-57 (1982) (internal quotation marks and citation omitted). Moreover, while pornography is entitled to First Amendment protection and can only be banned if deemed to be obscene under *Miller v. California*, 413 U.S. 15, 36-37 (1973), pornography that depicts minors can be proscribed, consistent with the First Amendment, whether or not the images are obscene. *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 240 (2002). Nonetheless, the power to criminalize the possession of child pornography is not without limits. *See Ferber*, 458 U.S. at 764. Child pornography laws, like obscenity statutes, present a risk of self-censorship of constitutionally protected material. Therefore, "[a]s with obscenity laws, criminal responsibility [for possession of child pornography] may not be imposed without some element of scienter on the part of the defendant." *Id.* at 765. However, what level of scienter is constitutionally required, consistent with the First Amendment, to criminalize the possession of child pornography has not been decided by the United States Supreme Court. *See Commonwealth v. Kenney*, 874 N.E.2d 1089, 1102 (Mass. 2007) (noting the absence of a decision from the United States Supreme Court on what level of scienter is constitutionally required to convict a person of possession of child pornography);

*State v. Mauer*, 741 N.W.2d 107, 113 (Minn. 2007) (noting that the minimum standard of scienter required for child pornography "remains unclear" because it has not yet been defined by the United States Supreme Court). Defendant would have us follow *Mauer*, however, we find *Kenney* more persuasive, and follow its reasoning.

{30} In *Mauer*, the Minnesota Supreme Court considered what level of scienter is required to satisfy the First Amendment under a Minnesota statute making it a crime to possess child pornography if the defendant "has reason to know" that the work involves a minor. 741 N.W.2d at 109 (internal quotation marks and citation omitted). The court concluded that the words "reason to know" are ambiguous in the context of the First Amendment, and resorted to rules of statutory construction to determine their meaning under its statute. *Id.* at 112-13. The court said that in *Osborne*, 495 U.S. at 115, the United States Supreme Court "approved a recklessness standard," and concluded that the phrase "has reason to know" in Minnesota's statute should likewise require a recklessness standard. *Mauer*, 741 N.W.2d at 115 (internal quotation marks and citation omitted). Following statutory and case law definitions of "recklessness" and "recklessly," the *Mauer* court held that, "a possessor of child pornography has 'reason to know' that a pornographic work involves a minor where the possessor is subjectively aware of a 'substantial and unjustifiable risk' that the work involves a minor." *Id.* (quoting Minn. Stat. § 617.247 subd. 4(a)).

{31}    In our view, this standard is not constitutionally required, and unnecessarily confuses what is required under Section 30-6A-3(A). *Osborne* does hold that a finding of recklessness satisfies the constitutional requirement of "some element of scienter" in a statute criminalizing the possession of child pornography, 495 U.S. at 115, but *Osborne* does not require a finding of recklessness. Again, the United States Supreme Court has not established what level of scienter is required to make possession of child pornography a crime; it has only stated that "some element of scienter" is required. On the other hand, in *Ginsberg v. New York*, 390 U.S. 629, 633-34, 643 (1968), the United States Supreme Court approved of a scienter requirement expressed as a "reason to know" in a statute that made it a crime "knowingly to sell" material defined to be obscene to a minor under seventeen.

{32}    We are more persuaded by *Kenney* in which the court held that Massachusetts's possession of child pornography scienter requirement that a defendant "knows or reasonably should know to be under the age of [eighteen] years of age" is constitutionally sufficient. 874 N.E.2d at 1102-03 (internal quotation marks and citation omitted). Child pornography, by definition, depicts children performing sexual acts. In most cases, the image itself gives a person a "reason to know" that the person depicted is under eighteen years of age. *See United States v. Katz*, 178 F.3d 368, 373 (5th Cir. 1999) ("A case by case analysis will encounter some images in

which the models are prepubescent children who are so obviously less than [eighteen] years old that expert testimony is not necessary or helpful to the fact finder."); *State v. Reinpold*, 824 N.W.2d 713, 723 & n.20, 724 (Neb. 2013) (noting that several courts have concluded that it is not always necessary for the prosecution to present expert testimony on the minor's age); *State v. May*, 829 A.2d 1106, 1118-19 (N.J. Super. Ct. App. Div. 2003) (stating that the images themselves that were admitted into evidence proved that the ages of those depicted were under sixteen years of age); *State v. Alinas*, 2007 UT 83, ¶ 31, 171 P.3d 1046 (stating that courts have generally recognized that, based on visual examination, jurors are capable of determining whether the children depicted are under eighteen years of age). The statutory requirement that a person "has reason to know" that a child depicted is under eighteen years of age requires "some element of scienter." The State's "burden of proof on that element may be satisfied with evidence that the physical disparity between the subject of the sexually explicit material and a person who is eighteen years of age is such that it would be obvious (beyond a reasonable doubt) to a reasonable person that the material was proscribed." *Kenney*, 874 N.E.2d at 1103. A defendant may present evidence that the defendant reasonably did not know the child's age, in which case the state will be required to "prove that no reasonable person would not have known that the child subject was under the age of eighteen." *Id.*

{33} No argument was made at trial that the children in the images admitted into evidence were not obviously under eighteen years of age, and there is no basis for us to conclude that the jury was misled or confused by the instructions they received.

{34} We hold that the scienter requirement in Section 30-6A-3(A) that a person "knows or has reason to know" that one or more of the participants depicted in the child pornography is under eighteen, is constitutionally sufficient.

> The fact that there will be very few cases at the margin raising doubt as to the age of the child, with the vast majority of cases being self-evident as to age, is sufficient, given the authority of the [l]egislature to regulate in this area, to conclude that the scienter requirement of the statute is constitutionally valid.

*Kenney*, 874 N.E.2d at 1103-04. Because there was no error in the jury instructions on this element of the crime, there was no fundamental error.

## C.  Deletion Does Not Equate With Possession

{35} This brings us to Defendant's last argument under this point, that the instructions suffered from fundamental error because they failed to include a statement that passing possession of the images for the sole purpose of deleting them from a computer is not legally sufficient to constitute possession. We disagree. The instructions required the jury to find that Defendant "intentionally possessed" the medium depicting the child pornography. Finding "intentional possession" under the instructions given required the jury to find that Defendant did more than exercise

25

passing control over the images for the purpose of deleting them. We therefore reject Defendant's last argument of fundamental error.

**3.      Admission of Sexual Items Into Evidence**

{36}     Before beginning his opening statement, the prosecutor approached the bench and advised the court that he intended to discuss that the investigators found bestiality on Defendant's computer, together with sex toys and male enhancement products in Defendant's bedroom. The prosecutor argued that this evidence was probative of Defendant's intent and that he was a sexual deviant. Defense counsel objected to the sex toys and male enhancement products on grounds that it was prejudicial and irrelevant to whether Defendant possessed child pornography. The district court ruled that evidence of the sex toys and male enhancement products could be mentioned because it was relevant to showing a prurient interest, motive, and intent. The district court also ruled that this evidence could be mentioned because proving a prohibited sexual act under the child pornography statute requires proof of a sexually explicit exhibition for the purpose of sexual stimulation. Defendant contends that the district court erred in ruling that the evidence could be mentioned in the State's opening statement, and in subsequently allowing its admission into evidence under Rules 11-403 and 11-404 NMRA. We agree that the evidence was inadmissible but that its admission into evidence was harmless error under the circumstances.

{37} The admission of evidence under Rules 11-403 and 11-404(B) is reviewed for an abuse of discretion. *State v. Otto*, 2007-NMSC-012, ¶ 9, 141 N.M. 443, 157 P.3d 8 ("We review the [district] court's decision to admit evidence under Rule 11-404(B) for [an] abuse of discretion."). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Otto*, 2007-NMSC-012, ¶ 9 (internal quotation marks and citation omitted); *see State v. Chamberlain*, 1991-NMSC-094, ¶ 9, 112 N.M. 723, 819 P.2d 673 ("The [district] court is vested with great discretion in applying Rule [11-]403, and it will not be reversed absent an abuse of that discretion.").

{38} Rule 11-404(B)(1) directs that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 11-404(B)(2). Rule 11-404(B)(1) articulates a principle that evidence of other crimes, wrongs, or acts should generally be excluded. *State v. Jones*, 1995-NMCA-073, ¶ 5, 120 N.M. 185, 899 P.2d 1139. However, if such evidence is offered for a proper purpose under Rule 11-404(B)(2), a district court is required to articulate or identify the consequential fact to which the proffered evidence is directed. *Jones*, 1995-

27

NMCA-073, ¶ 5; *see State v. Aguayo*, 1992-NMCA-044, ¶ 18, 114 N.M. 124, 835 P.2d 840 ("The initial threshold for admissibility of prior uncharged conduct is whether it is [for a proper purpose] probative on any essential element of the charged crime."). Finally, even if the evidence is ruled admissible, a district court must engage in the balancing process under Rule 11-403. *See id.* ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

{39}    We agree with Defendant that the sex toys and male enhancement products found in Defendant's bedroom had no particular relevance to any issue in the case. Rather, the evidence served no purpose other than to portray Defendant's character, in the words of the prosecutor, as a "sexual deviant." We therefore conclude that the evidence was not admissible under Rule 11-404(B). The district court's ruling was that the evidence was relevant. Rule 11-401 NMRA mandates that in order for evidence to be relevant, it must satisfy a two-part test: (1) it must have "any tendency to make a fact more or less probable than it would be without the evidence," and (2) the evidence "is of consequence in determining the action." A person's possession of sex toys and male enhancement products does not make it more likely that the person will search for, download, view, save, and delete child pornography using a computer.

28

*Cf. United States v. Quarles*, 25 M.J. 761, 775 (N-M. Ct. Crim. App. 1987) ("We fail to see how possession of sexual aids and erotic magazines equates with being a sex fiend or deviant much less having any probative value" as to whether the defendant sodomized his children). In other words, the evidence was irrelevant and inadmissible. *See* Rule 11-402 NMRA ("Irrelevant evidence is not admissible."). We therefore conclude that the district court abused its discretion in admitting this evidence. *See State v. Perez*, 2016-NMCA-033, ¶ 11, 367 P.3d 909 (noting that an abuse of discretion arises from the exercise of discretion based on a misunderstanding of the law).

{40} We must still determine if the error in admitting the sex toys and male enhancement products into evidence was reversible error. The admission of evidence in violation of the Rules of Evidence is a non-constitutional error, and a non-constitutional error is harmless unless there is a "reasonable probability" that the error affected the verdict. *State v. Vargas*, 2016-NMCA-038, ¶ 24, 368 P.3d 1232. "To determine the likely effect of the error, courts must evaluate all of the circumstances. These circumstances include other evidence of the defendant's guilt, the importance of the erroneously admitted evidence to the prosecution's case, and the cumulative nature of the error." *Id.* (citation omitted); *see State v. Tollardo*, 2012-NMSC-008, ¶¶ 43-44, 275 P.3d 110 (setting forth considerations for reviewing courts when

assessing whether the improper admission of evidence is harmless error). The evidence, not objected to, is that there were more than nine hundred downloads in a year, most of which were known images of child pornography, to the IP address used by Defendant's computer; that in March 2012, "exorbitant" amounts of child pornography were being downloaded to that same IP address; that in April 2012, child pornography was retrieved from a "shared" folder of a computer at that IP address; that when the search warrant was executed, "massive" amounts of non-child pornography, highly categorized, were found on Defendant's computer in addition to images of child pornography. This evidence evinces an intense, excessive interest in sex, and we fail to see any reasonable probability that admission of the sex toys and male enhancement products impacted the verdict. We therefore hold that the erroneous admission of this evidence was harmless.

**4.      Ineffective Assistance of Counsel**

{41}     Defendant argues that his attorney's ineffective assistance resulted in the admission of prejudicial, inadmissible evidence, and that he is therefore entitled to a new trial. The framework for deciding a claim of ineffective assistance of counsel is well settled.

> For a successful ineffective assistance of counsel claim, a defendant must first demonstrate error on the part of counsel, and then show that the error resulted in prejudice. Trial counsel is generally presumed to have provided adequate assistance. An error only occurs if

representation falls below an objective standard of reasonableness. If any claimed error can be justified as a trial tactic or strategy, then the error will not be unreasonable. With regard to the prejudice prong, generalized prejudice is insufficient. Instead, a defendant must demonstrate that counsel's errors were so serious, such a failure of the adversarial process, that such errors undermine judicial confidence in the accuracy and reliability of the outcome. A defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289 (alterations, internal quotation marks, and citations omitted). We now turn to each claim Defendant makes.

**A.    Evidence of Bestiality**

{42}    After the prosecutor advised the district court that he wanted to tell the jury in his opening statement that bestiality was found on Defendant's computer, the district court disallowed the evidence of bestiality on grounds that it was too prejudicial. However, defense counsel said she did not object because it was found on Defendant's computer and because similar search terms are used to find material related to bestiality and child pornography. The district court therefore ruled that if defense counsel had no objection, the bestiality evidence could be mentioned as well. Agent Sanchez later testified in cross-examination from defense counsel that bestiality and child pornography search terms are mututally exclusive.

31

{43}    Defendant argues that counsel was ineffective in allowing the highly inflammatory and prejudicial bestiality evidence to be admitted because there is "no doubt" it was inadmissible under Rules 11-404(B) and 11-403, and having agreed to its admission, she had an obligation to bring in evidence substantiating that search terms for bestiality and child pornography are similar. A reasonable trial strategy could be that the bestiality pornography evidence, together with the other evidence in the case, e.g., that Defendant had massive amounts of non-child pornography on the external hard drive to his computer, which included cartoon pornography, that was highly organized and categorized by type, actors, and the like, and that there was no active or accessible child pornography on the hard drive demonstrated that Defendant's interest in sexual matters, while extreme and outrageous, did not include an interest in child pornography. This argument was actually made in defense counsel's opening statement, as well as Defendant's brief to this Court. Counsel's alleged error in this instance can appropriately be justified as a trial tactic or strategy.

**B.    Sexual Child Story**

{44}    Agent Lea Whitis from the Department of Homeland Security was present during the search, primarily to catalogue the items seized, but she did walk through the house. Upon entering Defendant's room, she noted that the computer was on and that there was a story on it with child characters and what she characterized as "sexual

32

overtones." When she was asked how the story affected her, defense counsel objected on the basis that the story was not produced in discovery and Agent Whitis did not mention it in her interview. The prosecutor admitted that the story had not been disclosed or produced in discovery. The district court sustained the objection on relevancy grounds and because the story was not disclosed in discovery, while noting that some evidence relating to the story had already been admitted without objection.

{45}     Defendant argues that the failure to object to evidence of the child sex story until after the State discussed it in their opening statement and the State had elicited testimony about the story's contents, constituted ineffective assistance of counsel, "as the evidentiary challenges [to its admission] were clearly meritorious." Whether the child sex story was admissible is, however, subject to debate. *See Jaynes*, 2014 IL App (5th) 120048, ¶¶ 55-57 (concluding that stories about underage sex found on the defendant's computer were admissible in a prosecution for possession of child pornography to show that the defendant sought out sexual material involving children and that it was knowing and voluntary, rather than inadvertent). We cannot conclude that defense counsel provided ineffective assistance by failing to object to its receipt in evidence.

**Defendant's "Character"**

33

{46} Agent Keyes from the Department of Homeland Security was also present when the search warrant was executed. She testified to the condition of Defendant's room and the presence of sex toys, male enhancement products, and a weapon inside the room. Asked if she also learned anything else about Defendant, Agent Keyes said that Defendant's mother described Defendant as someone who was not very social, did not have friends or go out, and spent most of his time in his room.

{47} Defendant contends that defense counsel's failure to object to the testimony about what Defendant's mother said rendered counsel's assistance ineffective. Defendant asserts the evidence was inadmissible hearsay of Defendant's character that was inadmissible under Rules 11-404(B) and 11-403. The State counters that this testimony was "merely cumulative" of the testimony of Agent Keyes and other agents describing Defendant's room, and therefore was not prejudicial. In any event, the failure to object may have resulted from a deliberate choice not to object in order to avoid bringing attention to the testimony. *See State v. Martinez*, 1996-NMCA-109, ¶ 26, 122 N.M. 476, 927 P.2d 31 ("Failure to object to every instance of objectionable evidence does not render counsel ineffective; rather, failure to object falls within the ambit of trial tactics." (internal quotation marks and citation omitted)).

{48} In conclusion, we are unable to adequately determine whether any of the foregoing alleged shortcomings of counsel deprived Defendant of constitutionally

adequate and effective assistance of counsel. Concluding that Defendant has failed to present a prima facie case of ineffective assistance of counsel, we reject Defendant's claims without prejudice to Defendant pursuing habeas corpus proceedings based on these arguments. *See Bernal*, 2006-NMSC-050, ¶¶ 33, 36 (expressing a general preference for ineffective assistance of counsel claims to be brought and resolved in habeas corpus proceedings, and when a prima facie case is not made on appeal, the claim is rejected without prejudice to raise the claim in a habeas corpus proceeding).

**5.      Comment on Defendant's Silence**

{49}     In her opening statement, defense counsel discussed the execution of the search warrant. Defense counsel said that the jury would hear that Defendant's parents let the police into the home and were in fact cooperative in asking and answering questions, that there were no problems, and that Defendant "refused to talk without a lawyer."

{50}     During his testimony, Detective Rennie was asked how cooperative Defendant and his parents were when the search warrant was executed. Detective Rennie said that Defendant's father was compliant and responsive, and that Defendant's mother was also cooperative and answered questions. The prosecutor asked if Defendant had been willing to talk to the officers, and Detective Rennie answered, "no." Defense

35

counsel objected, the parties approached the bench, and the district court immediately sustained the objection and admonished the prosecutor not to comment on Defendant's silence. The district court noted defense counsel's opening statement and ruled that it would not declare a mistrial, even though none was requested. The district court told the prosecutor not to mention this again and instructed the jury to disregard the question and answer.

{51}   Defendant contends that the district court committed error in refusing to declare a mistrial because the question asked of Detective Rennie and his answer constituted an unconstitutional comment on Defendant's silence. Because the facts are undisputed, our review of Defendant's claim is de novo. *See State v. Gutierrez*, 2003-NMCA-077, ¶ 9, 133 N.M. 797, 70 P.3d 787.

{52}   Like the district court, we observe that the question to Detective Rennie apparently had its genesis in defense counsel's opening statement. New Mexico recognizes the doctrine of invited error. *State v. Jim*, 2014-NMCA-089, ¶ 22, 332 P.3d 870 ("It is well established that a party may not invite error and then proceed to complain about it on appeal."). This doctrine has been applied to the Fifth Amendment privilege to remain silent. *See, e.g.*, *State v. Crumley*, 625 P.2d 891, 894 (Ariz. 1981) (in banc); *Shingledecker v. State*, 734 So. 2d 483, 483-84 (Fla. Dist. Ct. App. 1999) (per curiam); *State v. Batchelor*, 579 S.E.2d 422, 428-29 (N.C. Ct. App.

36

2003); However, it is not necessary for us to consider whether the doctrine and any limits to that doctrine apply in this case. Assuming that Defendant's pre-arrest silence is entitled to constitutional protection, we conclude that Defendant's constitutional right to remain silent was not used against him.

{53} In *Greer v. Miller*, 483 U.S. 756, 759 (1987), the defendant testified in his own defense, and on cross-examination, he was asked, "Why didn't you tell this story to anybody when you got arrested?" Defense counsel immediately objected and requested a mistrial. *Id.* The trial judge denied the motion for mistrial, sustained the objection, and instructed the jury to disregard. *Id.* The prosecutor did not further pursue the matter, and did not mention it in his closing argument. *Id.* The United States Supreme Court held that, under the circumstances, the prosecutor had not used the defendant's silence. *Id.* at 764-65. Similarly, in *State v. Smith*, 2001-NMSC-004, ¶ 36, 130 N.M. 117, 19 P.3d 254, our Supreme Court held, "We hold that there was no violation of [the d]efendant's right to silence when the prosecutor's single question was not answered, defense counsel immediately objected, the prosecutor did not pursue the matter further, and defense counsel refused a curative instruction." There is no material difference here.

{54} Although Detective Rennie answered the question, there was an immediate objection that was sustained, the prosecutor was admonished not to mention

Defendant's silence again, the prosecutor complied, and the jury was instructed to disregard the question and the answer. Under the circumstances, we hold that there was no unconstitutional, impermissible use made of Defendant's silence.

**6.      Remaining Arguments**

{55}      We summarily answer Defendant's remaining arguments. First, Defendant argues, pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982, and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1, that the district court lacked personal and subject matter jurisdiction. Defendant filed numerous pro se motions asserting that the district court lacked jurisdiction. Among the grounds asserted were that Defendant is a private American citizen, not a United States citizen, with a private rather than a public residence in New Mexico; that he is not the person named in the criminal information because his name is not spelled in capital letters; that the prosecution could not proceed because there is no "flesh and blood" victim. No authority is cited to us in support of Defendant's argument, and we do not consider it. *See State v. Ibarra*, 1993-NMCA-040, ¶ 13, 116 N.M. 486, 864 P.2d 302 ("We are entitled to assume, when arguments are unsupported by cited authority, that supporting authorities do not exist.").

{56}      Secondly, Defendant argues that he was denied his right to conflict-free counsel because counsel did not agree with jurisdictional arguments asserted in

38

Defendant's pro se motion to dismiss for lack of jurisdiction, or his motion to excuse the district court judge on the grounds that he was biased against pro se litigants. Defendant fails to cite to any authority supporting the legal validity of those motions, or to support his assertion that defense counsel has an obligation to argue in support of pro se motions that have no merit. We therefore decline to consider this argument any further. *See id.*

{57}  Finally, Defendant argues that he was denied his constitutional right to represent himself. To determine if a defendant has made a valid, knowing, intelligent, and voluntary waiver of his constitutional right to counsel, *State v. Reyes*, 2005-NMCA-080, ¶¶ 4, 9, 137 N.M. 727, 114 P.3d 407, a district court is required to "inform itself regarding a defendant's competency, understanding, background, education, training, experience, conduct and ability to observe the court's procedures and protocol." *State v. Chapman*, 1986-NMSC-037, ¶ 10, 104 N.M. 324, 721 P.2d 392. Defendant prevented the district court from making that determination when he refused to answer any of the district court's questions relating to his ability to represent himself, and simply kept repeating that he is "standing on [his] documents." There was no error in denying Defendant's request to represent himself.

**CONCLUSION**

{58}  The judgment and sentence of the district court is affirmed.

39

{59}    **IT IS SO ORDERED**.

                              _____
                              **MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**JONATHAN B. SUTIN, Judge**