This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

### IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: June 30, 2025**

**No. S-1-SC-40100**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**STEPHEN JAY GOLDMAN, JR.,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Justine Fox-Young, P.C.
Justine C. Fox-Young
Albuquerque, NM

for Appellant

Raúl Torrez, Attorney General
Charles J. Gutierrez, Supervising Assistant Solicitor General
Santa Fe, NM

for Appellee

### DECISION

**ZAMORA, Justice.**

### I.    INTRODUCTION

**{1}** Defendant, Stephen Goldman Jr., appeals his convictions for two counts of felony murder, contrary to NMSA 1978, Section 30-2-1(A)(2) (1994), arising from the kidnapping and killing of two teenage victims, Collin Romero and Ahmed Lateef, and the armed robbery of Lateef. Defendant presents multiple challenges to the jury

instructions, arguing (1) the district court erred in not instructing the jury on second-degree murder as a lesser-included offense of felony murder; (2) the district court's response to the jury's question about whether it could convict of both felony murder and second-degree murder was a misstatement of the law and compounded juror confusion; (3) the jury instructions for felony murder and aiding and abetting felony murder were "hopelessly confusing and misleading;" and (4) the court erred in including armed robbery as a predicate felony for the felony murder of Romero. Defendant also argues that his counsel was ineffective. We affirm and exercise our discretion to decide this appeal by nonprecedential decision. *See* Rule 12-405(B)(1) NMRA.

## II. BACKGROUND

**{2}** Defendant was convicted of two counts of first-degree felony murder for the killing of Lateef and Romero and was sentenced to life imprisonment. *See* N.M. Const. art. VI, § 2 ("Appeals from a judgment of the district court imposing a sentence of . . . life imprisonment shall be taken directly to the supreme court."). His two co-defendants were Jimmie Atkins and Julio Almentero, each of whom have also filed direct appeals with this Court. *See State v. Atkins*, S-1-SC-39940, dec. (N.M. June 2, 2025) (nonprecedential) (affirming on all grounds); *State v. Almentero*, S-1-SC-40349 (appeal filed Mar. 22, 2024, and pending as of the filing of this decision). The following events were supported by the evidence at trial.

**{3}** Lateef and Romero had been staying at a friend's home for several days. Lateef agreed to meet with Defendant to purchase a firearm in exchange for some cash and marijuana. However, when Lateef arrived at the meeting location, Defendant was not alone, but was accompanied by co-defendants Atkins and Almentero. Lateef entered Defendant's vehicle and left the meeting spot with Defendant and the co-defendants. Soon after, Defendant uploaded two videos to Snapchat, depicting Almentero beating Lateef in the back seat of the moving vehicle.

**{4}** Following these events, Defendant brought Lateef back to his friend's house, because Defendant did not believe the marijuana weighed the agreed upon amount. After weighing and taking a photo of the marijuana, Lateef went back outside to meet Defendant, Almentero, and Atkins. Lateef then called Romero and requested that Romero bring out two more ounces of marijuana and Lateef's wallet because Defendant wanted change. Romero complied and joined Lateef in Defendant's car. Romero and Lateef left with Defendant and co-defendants. While in the car, Atkins uploaded a third and final video, depicting both Lateef and Romero in the vehicle's back seat with bare torsos and blood coming from their faces while Atkins taunts and laughs at them. Within an hour of the final video, Romero and Lateef were killed near the mesa on the western edge of Albuquerque. Romero had been shot nine times and Lateef had been shot nineteen times.

**{5}** While on the mesa, Defendant called Almentero's uncle, Anthony Aragon, who agreed to meet Defendant, Atkins, and Almentero at a nearby location. When Aragon arrived, Defendant asked him to help him with "some things in the trunk," which Aragon understood to mean that there were bodies in the trunk. Aragon testified that Defendant

and Atkins and Almentero had blood on their clothes and hands and the back of the vehicle had blood on it. Aragon helped the co-defendants wash the vehicle at a nearby carwash, before telling Defendant and Almentero to leave. After Defendant and Almentero left, Aragon stayed behind with Atkins. Aragon purchased cleaning supplies for the vehicle and joined Atkins on the mesa to remove Romero's and Lateef's bodies from the vehicle's trunk and dispose of them behind a tree. A few days later, Aragon accompanied Atkins back to the mesa to bury the bodies. Defendant, Atkins, and Almentero were later arrested and charged for their connections to the killings.

{6}     At trial, the jury was instructed on several charges including two counts of first-degree deliberate-intent murder, one for each victim. Each of these counts included second-degree murder as a lesser-included offense and felony murder as an alternative charge. The jury was given a step-down instruction to aid in its deliberations. During deliberations, the jury submitted the following question to the district court: "Can the defendants be found guilty of 2nd degree murder and felony murder?" The district court read the jury's question to the parties and proposed responding "yes" to it. The district court explained to the parties that the jury could convict Defendant on both charges because felony murder was instructed as an alternative and the charges contained different elements. Over Defendant's objection, the district court instructed the jury, "I don't think we can really give you any detailed explanation with regard to it except to say 'yes' and that you have to follow the jury instructions that [were] presented to you and that's the best that we can do."

{7}     The jury returned a verdict convicting Defendant of two counts of first-degree felony murder, two counts of kidnapping, conspiracy to commit kidnapping, the armed robbery of Lateef, conspiracy to commit armed robbery, three counts of tampering with evidence, and conspiracy to commit tampering with evidence. The jury did not reach a verdict on first-degree deliberate-intent murder or the lesser-included offense of second-degree murder. The district court vacated Defendant's convictions for kidnapping and armed robbery on double jeopardy grounds. Defendant now appeals his convictions for felony murder.

## III.     DISCUSSION

### A.     Jury Instructions and Jury Confusion

{8}     "The propriety of jury instructions given or denied is a mixed question of law and fact" which we review de novo. *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996.[1]

---

[1] We refrain from addressing Defendant's argument that the district court "improperly" included armed robbery as a predicate felony to the felony murder of Romero because his argument is undeveloped and unsupported by legal citation. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1239 (refusing to consider issues unsupported by cited authority and explaining that "an appellant must submit argument *and authority*" to have an issue reviewed on appeal (emphasis in original)). We review Defendant's remaining challenges to the jury instructions in turn.

1. **The district court's response to the jury's question was an accurate statement of the law that did not result in reversible error**

{9}    Defendant argues the district court erred by misstating the law when it responded "yes" to the jury's question on whether it could return convictions for both second-degree murder and felony murder. The State argues the district court did not err because it accurately responded to the jury's question and was based on the jury instruction it had been provided.

{10}    We review Defendant's preserved challenge to the district court's response for reversible error. To decide whether reversible error has occurred, this Court must determine "whether a reasonable juror would have been confused or misdirected by the jury instruction." *State v. Sandoval*, 2011-NMSC-022, ¶ 13, 150 N.M. 224, 258 P.3d 1016 (internal quotation marks and citation omitted). "[J]uror confusion or misdirection may stem not only from instructions that are facially contradictory or ambiguous, but from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. "Jury instructions are to be read and considered as a whole and when so considered they are proper if they fairly and accurately state the applicable law." *State v. Cabezuela*, 2011-NMSC-041, ¶ 21, 150 N.M. 654, 265 P.3d 705 (brackets, internal quotation marks, and citation omitted).

{11}    We presume that UJIs are "correct statements of law." *See State v. Wilson*, 1994-NMSC-009, ¶ 5, 116 N.M. 793, 867 P.2d 1175. Here, the step-down instructions for deliberate-intent and second-degree murder mirrored UJI 14-6002B NMRA, which guides a jury on how to return a verdict when instructed on a necessarily included offense, and therefore were presumptively correct. Under the step-down instruction for deliberate-intent first-degree murder, the jury could proceed to second-degree murder only if it unanimously acquitted Defendant of first-degree deliberate-intent murder. But no such restriction was placed on the jury's ability to find Defendant guilty of the alternative offense of felony murder; it could find him guilty of that offense irrespective of its verdicts on first-degree deliberate-intent murder or second-degree murder. *See, e.g., State v. Pierce*, 1990-NMSC-049, ¶ 46, 110 N.M. 76, 792 P.2d 408 (noting that the state "may charge in the alternative"). If the jury were to return multiple guilty verdicts for the same offense on alternate theories, the district court would then be required to "vacate the duplicative convictions to avoid violating the constitutional proscription against double jeopardy." *State v. Galindo*, 2018-NMSC-021, ¶ 28, 415 P.3d 494. Therefore, the court's response was an accurate statement of the law, would not have confused or misdirected a reasonable juror, and did not result in reversible error. *See Benally*, 2001-NMSC-033, ¶ 12.

2. **Defendant's remaining challenges to the jury instruction did not result in fundamental error**

{12}    We review Defendant's remaining unpreserved challenges to the jury instructions for fundamental error. *Id.* Fundamental error analysis requires that the Court first determine "whether error has occurred" and, if so, "whether the error is fundamental."

*State v. Romero*, 2023-NMSC-014, ¶ 6, 533 P.3d 735 (internal quotation marks and citations omitted). Because we conclude there was no error in this case, we hold there was no fundamental error.

**a.      The lack of a jury instruction for second-degree murder as a lesser-included offense of felony murder did not result in fundamental error**

**{13}**      Defendant argues the district court's failure to instruct the jury on second-degree murder as a lesser-included offense of felony murder amounted to a failure to instruct on the essential element of causation for felony murder. This argument lacks merit. The felony-murder instruction includes a causation element, which Defendant has not challenged as an incomplete or misleading statement of the law. *See* UJI 14-202 NMRA (requiring the jury to find "the defendant caused the death . . . during the commission" of the predicate felony). In addition, Defendant fails to argue and we are unable to discern how this instruction, standing alone, failed to properly inform the jury of the causation element without the additional instruction for second-degree murder. We therefore presume the instruction was correct. *See Wilson*, 1994-NMSC-009, ¶ 5. Accordingly, there was no error, let alone fundamental error, because the felony-murder instruction required the jury to find Defendant caused the deaths during the commission of a predicate felony. *See State v. Adamo*, 2018-NMCA-013, ¶ 27, 409 P.3d 1002 ("Since there was no reversible error, it follows that there was no fundamental error in the instructions.").

**b.      Defendant failed to show fundamental error in the felony-murder and aiding-and-abetting jury instructions**

**{14}**      Defendant argues that the "multiple alternatives" in the felony-murder and aiding-and-abetting instructions resulted in "fundamental error as there is no way to determine on what alternative or alternatives" the jurors may have convicted Defendant. Defendant challenges two specific uses of the "multiple alternatives," which we address in turn.

**i.      The use of *and/or* to separate predicate felonies of kidnapping and armed robbery did not result in fundamental error**

**{15}**      Defendant argues his conviction must be reversed under *State v. Taylor* because both the felony-murder and aiding-and-abetting instructions used *and/or* to separate the predicate felonies of kidnapping and armed robbery which, he argues, caused juror confusion. 2024-NMSC-011, 548 P.3d 82. The State disagrees with Defendant's characterization of *Taylor* and its application to this case. We agree with the State.

**{16}**      In *Taylor*, two defendants were convicted of reckless child abuse resulting in death and reckless child abuse resulting in great bodily harm after leaving two young children in a hot vehicle. *Id.* ¶¶ 5, 8. The Court held the jury instruction resulted in reversible error because it "confused and misdirected the jury." *Id.* ¶¶ 9-10, 12. The Court reasoned the jury instruction's use of *and/or* allowed the jury to "make a finding of guilt on a legally inadequate basis" because three of the four alternatives separated by *and/or* were violations of CYFD policies and not criminal conduct. *Id.* ¶¶ 12, 17-18.

Because three of the four alternative theories of guilt were legally inadequate, the Court reasoned that the well-established principle that "'jury unanimity is required only as to the verdict, not to any particular theory of guilt'" did not apply. *Id.* ¶ 21 (quoting *State v. Godoy*, 2012-NMCA-084, ¶ 6, 284 P.3d 410).

**{17}** *Taylor* does not apply to this case for two reasons. First, unlike *Taylor*, each predicate felony in this case was a legally sufficient basis to support a conviction for felony murder. The use of *and/or* provided the jury with the option of finding that Romero's and Lateef's deaths were caused in the course of either armed robbery or kidnapping, or in the course of both felonies. Under these circumstances, we trust the jury to determine whether the evidence supports a conviction under any of the legally valid alternatives. *See State v. Mailman*, 2010-NMSC-036, ¶¶ 6, 11, 148 N.M. 702, 242 P.3d 269 (acknowledging that under a general verdict, reversal is only required "if one of the bases of conviction is legally inadequate" while reversal is not required if one of the alternatives is factually inadequate (internal quotation marks and citation omitted)). Second, because each theory of guilt was legally sufficient, unanimity as to the predicate felony was not required. *See* Rule 5-611(A) NMRA (requiring only that a jury's *verdict* must be unanimous); *see also Godoy*, 2012-NMCA-084, ¶ 6 ("jury unanimity is required only as to the verdict, not to any particular theory of guilt"). Thus, unlike in *Taylor*, the use of *and/or* was not erroneous in this case.

### ii. The aiding-and-abetting instructions on both Romero's and Lateef's murders did not result in fundamental error

**{18}** Defendant also argues that the aiding-and-abetting instruction caused juror confusion because the single instruction required the jury to determine whether Defendant aided and abetted both Lateef's and Romero's murders. The aiding-and-abetting instruction required the jury to find "[d]uring the commission of the felony . . . Romero and/or . . . Lateef was killed." Defendant argues the reference to both murders in the same jury instruction departed from the UJI, which is written to apply to a single crime. *See* UJI 14-2821 NMRA (referencing a singular murder, singular decedent, and singular predicate felony). The State disagrees and asserts the instruction would not cause juror confusion. The State argues that, taken together with the separate felony-murder instructions, there "is no appreciable risk that the jury would have been misdirected . . . into convicting Defendant for felony murder of Lateef" based on the finding that he aided and abetted Romero's killing, "or vice versa."

**{19}** As a threshold matter, Defendant does not explain how the departure from the UJI in this case would have confused a reasonable juror. We therefore need not reach the issue. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not review unclear arguments, or guess at what a party's arguments might be." (brackets, internal quotation marks, and citation omitted)). We note, however, no reasonable view of the evidence could establish that only one of the victims was killed during the commission of the felony, while the other was not. Defendant has failed to establish that the instructions given in this case were erroneous or resulted in jury confusion. Therefore, the jury instruction's use of *and/or* and its reference to multiple felony murders, victims, and predicate felonies did not result in error under the facts of

this case, let alone fundamental error. *See Adamo*, 2018-NMCA-013, ¶ 27 (noting that when there is no reversible error, there can be no fundamental error).

**B.    Defendant Has Not Established a Prima Facie Claim of Ineffective Assistance of Counsel**

**{20}**    Defendant argues he has established a prima facie case of ineffective assistance of counsel. To establish ineffective assistance of counsel, we apply a two-part test that requires a petitioner to establish that "counsel's performance was deficient" and "the deficient performance prejudiced the defense." *State v. Paredez*, 2004-NMSC-036, ¶ 13, 136 N.M. 533, 101 P.3d 799 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To prove deficient performance, a defendant must prove that counsel "did not exercise the skill of a reasonably competent attorney." *Duncan v. Kerby*, 1993-NMSC-011, ¶ 10, 115 N.M. 344, 851 P.2d 466. Under the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Trammell*, 2016-NMSC-030, ¶ 23, 387 P.3d 220 (quoting *Strickland,* 466 U.S. at 694). "Failure to prove either prong of the test defeats a claim of ineffective assistance of counsel." *State v. Guerra*, 2012-NMSC-027, ¶ 20, 284 P.3d 1076 (internal quotation marks and citation omitted). The Court prefers that ineffective assistance of counsel claims be brought through habeas corpus proceedings because "[o]n direct appeal, the record is frequently inadequate to either evaluate counsel's performance or to determine prejudice." *State v. Astorga*, 2015-NMSC-007, ¶ 17, 343 P.3d 1245.

**{21}**    Defendant argues that counsel's performance was deficient on four grounds, three of which are easily disposed of. First, Defendant argues that counsel failed to object to the "defective" jury instructions. This argument fails because, as explained above, the jury instructions were legally correct. Second, Defendant argues counsel was ineffective because counsel "reserved her opening argument and then made no argument when the defense put on no case." This argument is contradicted by the record, which establishes that defense counsel participated throughout the trial and gave a twenty-minute closing argument where she argued the lack of physical evidence, that Aragon had "much more to do with the death of these boys than he wants you to believe," and that the victims were alive at the time Aragon took them out to the mesa. Third, Defendant challenges counsel's "failure to file any post-trial motions in this case despite the trial issues detailed above." This argument is undeveloped as Defendant does not specify what motions counsel should have filed or why failure to do so amounts to deficient performance. *See State ex rel. Off. of the State Eng'r v. Romero*, 2022-NMSC-022, ¶ 2 n.1, 521 P.3d 56 (declining to address issue on appeal that lacks factual basis and argument). Moreover, because none of the trial issues raised by Defendant support appellate relief, they also fail to support a finding of deficient performance.

**{22}**    Defendant's final argument fails because the factual record is not sufficiently developed to determine whether counsel's performance was deficient. Defendant argues counsel was ineffective because she failed "to seek a material witness warrant" to subpoena a complaint made by one of Aragon's former cellmates, alleging Aragon

had confessed to being the shooter. The record is insufficient to determine on direct appeal whether defense counsel's inaction amounted to deficient performance or may have been a result of a reasonable decision or strategy. *See State v. Jacobs*, 2000-NMSC-026, ¶ 49, 129 N.M. 448, 10 P.3d 127 ("A prima facie case for ineffective assistance of counsel is not made if there is a plausible, rational strategy or tactic to explain counsel's conduct."), *overruled on other grounds by State v. Martinez*, 2021-NMSC-002, ¶ 72, 478 P.3d 880. Without knowing the substance of the claim, we cannot assess whether it probably would have affected the outcome of Defendant's trial. As a result, this claim is better suited to habeas review. *See State v. Crocco*, 2014-NMSC-016, ¶ 13, 327 P.3d 1068; Rule 5-802(H)(5) NMRA (allowing the district court to hold evidentiary hearings in habeas corpus proceedings in non-death penalty cases). Therefore, Defendant has not made a prima facie showing of ineffective assistance of counsel.

## IV.    CONCLUSION

{23}    For the reasons stated above, we affirm the district court on all issues raised in this appeal.

{24}    **IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Justice**

**WE CONCUR:**

**DAVID K. THOMSON, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**JULIE J. VARGAS, Justice**